MARVIN, Judge.
From a judgment awarding worker’s compensation benefits for total and permanent disability to claimant, the employer appeals, contending that the employee’s disability ended some five months following her accidental injury. The sole issue is whether the trial court was clearly wrong in weighing the medical evidence. We affirm.
The claimant, Mrs. Long, sustained an injury to her lower back when she lifted a wooden box while at work on May 30, 1978. She saw her employer’s local physician who referred her to a Shreveport orthopedist (Dr. Edwards) for treatment. Dr. Edwards saw her first on June 5, 1978, and during the course of his hospitalization of her from June 7 to June 14, 1978. After that time and during the course of his treatment, he saw her on July 7, July 28, August 4, August 23, September 20, December 20, 1978, and on June 20, 1979. Dr. Edwards referred her to Dr. Boykin, a neurosurgeon, who saw her on August 4, 1978, and to Dr. Osborne, an MD who is called a pain specialist, who saw her about two months later. These doctors reported to Dr. Edwards. Dr. Edwards’ trial disposition was taken October 8,1979. Judgment in this case was signed on June 11, 1980.
Mrs. Long was seen on July 11, 1978, by Dr. Rambach, an orthopedist, at the request of the employer. He referred her to Dr. Brown, a neurologist, for electromyographic (EMG) studies to determine if Mrs. Long was exaggerating her complaints of pain which Dr. Rambach thought were generally inconsistent. The validity of the EMG as a diagnostic aid was questioned by Dr. Edwards.
Dr. Edwards diagnosed claimant’s injury as a lumbosacral sprain [a probable L4-5 disc on the right side, and possibly an L-5S-l disc on the right side]. Dr. Edwards found claimant to be in great pain which only moderated somewhat over the ensuing year. Claimant had difficulty dorsal flexing her right big toe. Dr. Edwards revealed that claimant had a negative straight leg raising on the right while seated and positive while she was supine. Dr. Edwards agreed that this was inconsistent with her objective symptoms, but stated that her performance was consistent in this respect throughout his treatment and the evaluation of Mrs. Long by Dr. Edwards and other physicians. Dr. Edwards noted some scoliosis (lateral curvature of the spine) that was probably posture-related. He also noted a psychological overlay, secondary to the injury, which he said bordered on neurosis. Mrs. Long’s pain persisted throughout the period she consulted Dr. Edwards.
When Dr. Edwards felt he could no longer do her any good, he referred her to Dr. Osborne, a pain specialist. Claimant could not afford to see Dr. Osborne because her employer refused to pay for such consultation. Throughout his experience with claimant, Dr. Edwards observed in his reports and maintained that Mrs. Long remained unable to return to work until her lumbosacral sprain was resolved. His evaluation was made with full knowledge of the medical “inconsistencies” noted by himself and by other specialists and was maintained by him after he re-examined claimant after she had been evaluated by other specialists.
Dr. Rambach and Dr. Boykin expressed some doubt about the validity of Mrs. Long’s complaints of pain. Dr. Rambach, who saw Mrs. Long only on July 11, 1978, and who reviewed Dr. Brown’s EMG of August 23,1978, opined on October 23,1978, that Mrs. Long . is able to return to work.” Dr. Edwards saw her three or more times after August 23, 1978, nonetheless remained firm in his opinion that Mrs. Long’s disability continued. The trial court discusses the details of the lay and the medical testimony:
*933 “The Court notes that plaintiff is a large framed 40 year old white woman who can weigh 190 pounds and not be considered overweight. She had done moderately heavy labor shortly prior to her injury for 15 months at the Louisiana Pacific Plywood Mill in Texas and for the defendant. Prior to the subject accident she had never had any such or kindred injury. She had been the bread-winner in her family since her husband’s total disability in October, 1970. She had been a good housekeeper, mother of four, worked a good-sized garden almost every year, hunted and fished with friends, and was a happy, congenial person who seldom, if ever, complained about anything. The lay testimony adduced and that of her attending physician, Dr. T. A. Edwards, describes her as a completely changed personality as a result of the subject accident. The essence of the lay testimony is that plaintiff seems to have undergone personality and physiological changes since the subject injury, no longer being energetic, diligent about her housework, gardening, etc., and that she has continuously complained of debilitating pain in the lower legs and back.
“Dr. T. A. Edwards, orthopedic surgeon, was consistent, even with respect to the inconsistencies he noted on July 7, 1978. Irrespective of the inconsistencies which he noted, he remained strongly of the opinion that the plaintiff was disabled as a result of the subject injury. The Court had the occasion to observe plaintiff closely during these proceedings and made specific notation that she was a person with ‘problems, depressed, moved very carefully etc. .. ., never smiling, occasionally biting her nails, ofttimes seeming a bit distracted.’ In effect, the Court observed her to be substantially as described by Dr. Edwards and the lay testimony.
“This testimony is supported in part by that of two other medical experts, Drs. Fred B. Boykin and Baer I. Rambach, neurosurgeon and orthopedic surgeon, respectively. Dr. Edwards referred plaintiff to Dr. Boykin because of his initial concern that plaintiff had suffered a disc injury. It is important to note that Dr. Boykin examined the plaintiff only one time, on August 14,1978, two months and one week after the injury. Dr. Rambach examined the plaintiff only one time, on July 11, 1978. Both found some of the subjective complaints that Dr. Edwards had noted, pain in flexion, extension, tenderness in the lumbar region, etc. Both found the same inconsistencies that Dr. Edwards noted and evaluated over the lengthy period of time he treated plaintiff. Dr. Rambach also noted ‘moderate paraspinal involuntary muscle spasm in the lower region of the spine and mid-lumbosacral area’ (Page 5 of deposition, Line 5) and ‘... some weakness noted upon extension or straightening out or raising up of the great toe of the right foot’ (Lines 17 and 18), etc., this on July 11, 1978. Dr. Boykin found no muscle spasm.
“Of concern to the Court was Dr. Ram-bach’s letter dated October 23, 1978, (Rambach No. 2, next to last page of his deposition) wherein he notified the employer-defendant that plaintiff was able to return to work. Dr. Rambach had not seen the plaintiff in 3¡á months (since July 11, 1978), at which time he noted muscle spasms, etc. (supra) and heard her complaints. He clearly based this conclusion on an EMG report by Dr. H. Winston Brown, dated August 23, 1978, two months earlier, and a month and one-half after July 11,1978, the date of Rambach’s only examination (and EMG does not rule out a lumbosacral strain]). Dr. Boykin also placed great emphasis on the EMG report, again for the sole purpose of eliminating the probability of a disc injury and consequent nerve irritation. Dr. Edwards testified that the EMG was a questionably valid diagnostic aid (Page 29, Lines 1-3, Edwards deposition).
“Both Drs. Boykin and Rambach agreed, as does the jurisprudence of this state, that they would have to defer to the treating physician, Dr. Edwards, if his examinations continued to find plain *934 tiff disabled as a consequence of the subject injury (Rambach, Page 19; Boykin, Page 23).
“This Court has struggled with concern over the objective evidence by Drs. Boy-kin and Rambach that plaintiff was not cooperating with their examinations (Boykin deposition, Pages 12-14; Ram-bach deposition, Page 11). Nevertheless, the treating orthopedic surgeon, Dr. T. A. Edwards, was well aware of these ‘inconsistencies’ and took their possible portent into consideration in evaluating the physical condition of his patient. Drs. Boykin and Rambach each had only one opportunity (one examination) to evaluate the possible implications of these inconsistencies. All witnesses, lay and expert, are consistent in their observations of the plaintiff and consistent with the Court’s observation of her. The Court is convinced from its own observations of the plaintiff and the lay testimony adduced that plaintiff has never been a malingerer, but on the contrary; to find otherwise would be to conclude that plaintiff has been conducting a charade for almost two years, playing a completely contradictory personality. Her attending orthopedic surgeon, Dr. T. A. Edwards, the most knowledgeable expert on her condition, concludes that she continues to suffer a disabling injury, in the nature of a lum-bosacral strain, resulting from the subject accident. He had made her an appointment with a Dr. Philip Osborne for possible rehabilitation and consultation, but defendant refused to honor the medical bills portent and plaintiff was unable to finance same (she kept her first appointment). She was financially unable to continue seeing Dr. Osborne after June 20, 1979 (transcript Page 74, Lines 24-30, Page 75, Lines 1-3).
“The Court finds that plaintiff has established by a preponderance of the evidence that her disability resulted from the subject accident which has continued through the date of this trial (October 12, 1979), and indefinitely. * * * ”
Defendant contends on appeal that Dr. Edwards’ evaluation of disability is based solely upon Mrs. Long’s subjective complaints of pain and is not sufficient to overcome the other medical testimony and that the trial court erred in finding otherwise.
It is not error for a trial court to give greater weight to the testimony of the treating physician than to testimony of other physicians who had not frequently examined the claimant. See Gowers v. Gour, 350 So.2d 935 (La.App. 2d Cir. 1977), writ refused. This is the “most oft-cited rule”. See Malone-Johnson, “Workmen’s Compensation”, 2d Ed., La.Civil Law Treatise, Vol. 13, § 288, and at p. 674.
For reasons assigned by the lower court which we adopt, and at appellant’s cost, judgment is
AFFIRMED.