**Marilyn R. WATERS, Plaintiff,**

**v.**

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 88–088–Y.**

United States District Court, D. Massachusetts.

March 31, 1989.

Marilyn R. Waters, Roxburg, Mass., pro se.

Eileen Hagerty, Asst. U.S. Atty., for defendant.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

This matter is before the Court for review of a final decision of the Secretary of Health and Human Services ("the Secretary") denying benefits to the claimant, Marilyn Waters. Waters moves for summary judgment to reverse the Secretary's decision and award benefits to her.

1. Waters' complaint states that she worked these jobs in April and September. Complaint at 1.

## I.

Waters was born on June 30, 1940, and is currently 48 years of age. She has obtained a General Equivalency Degree and has worked most recently as an educational counselor and as a lead paint technician.

On April 3, 1983, Waters was injured in an automobile accident. Within a few months after the accident, she worked as a bus driver trainee for three weeks and as a hotel maid for three weeks.[1] Waters asserts that she was required to leave both jobs due to pain resulting from injuries to her head and back she sustained in the April accident. Other than the foregoing, she has not worked since the accident. (Tr. 11; Complaint at 1)

Based on her disability, Waters applied for disability insurance benefits and Supplemental Security Income benefits on July 28, 1986. (Tr. 56–59, 233–42) The applications were denied initially (Tr. 69–70, 243) and on reconsideration (Tr. 78–79) by the Social Security Administration. The Administrative Law Judge considered the case *de novo* and, on July 23, 1987, found that Waters was not disabled. (Tr. 8–19) The Appeals Council approved the decision of the Administrative Law Judge on October 27, 1987 (Tr. 4–5), rendering it the final decision of the Secretary. Waters then appealed to this Court.

## II.

A district court reviewing a decision of the Secretary must determine whether the decision is supported by substantial evidence and conforms to statutory requirements. *Geoffroy v. Secretary of Health and Human Services,* 663 F.2d 315, 319 (1st Cir.1981). The relevant statute defines a disabled individual as one who is unable:

to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

The decision of the Administrative Law Judge sets the time periods as May and July. (Tr. 11)

42 U.S.C. sec. 423(d)(1)(A) (1982). Section 423(d)(2)(A) further provides that an individual:

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy....

*Id.* sec. 423(d)(2)(A).

The Secretary has promulgated regulations that employ a series of tests to determine whether a claimant is disabled. 20 C.F.R. sec. 404.1520 (1985). *See Goodermote v. Secretary of Health and Human Services*, 690 F.2d 5, 6 (1st Cir.1982). In particular, the Social Security Administration asks five questions in the following order:

First, is the claimant currently employed? If so, the claimant is automatically considered not disabled.

Second, does the claimant have a severe impairment? A "severe impairment" means an impairment which "significantly limits [his or her] physical or mental capacity to do basic work activities." 20 C.F.R. sec. 404.1520(c) (1985).[2] If the claimant does not have a severe impairment, the claimant is automatically considered not disabled.

Third, does the claimant have an impairment equivalent to one specifically listed in 20 C.F.R. Part 404, Supt. P, App. 1 (hereinafter, "Appendix 1") which meets the duration requirement set forth therein? 20 C.F.R. sec. 404.1520(d). If so, the claimant is automatically considered disabled.

These first three tests are threshold "medical" tests. If the claimant is found to have a severe impairment (test 2) but that impairment is not equivalent to one listed in Appendix 1 (test 3), the agency goes on to the fourth and fifth questions, which apply "vocational" tests.

Fourth, does the claimant's impairment prevent her from performing work of the sort she has done in the past? 20 C.F.R. sec. 404.1520(e). If not, she is not disabled. If so, the agency asks the fifth question.

Fifth, does the claimant's impairment prevent her from performing other work of the sort found in the economy? 20 C.F.R. sec. 404.1520(f). If so, she is disabled; if not, she is not disabled. *Goodermote*, 690 F.2d at 6–7.

In applying these last two "vocational" tests, the claimant has the burden of proving that she is disabled under the fourth test; that is, she must prove that her disability is serious enough to prevent her from working at her former jobs. However, the Secretary bears the burden of showing that the claimant has not satisfied the fifth test; that is, the Secretary must show the existence of other jobs in the national economy that the claimant's impairment does not prevent her from performing. *Id.* at 7.

Judicial review of Social Security disability determinations is limited, and the Court must affirm the Secretary's decision if it is supported by substantial evidence. The resolution of conflicts in the evidence and the determination of the ultimate question of disability is for the Secretary. Therefore, this Court must uphold the Secretary's findings in this case if a reasonable mind, reviewing the entire record as a whole, could accept it as adequate to support the Secretary's conclusions. *Rodriguez v. Secretary of Health and Human Services*, 647 F.2d 218, 222 (1st Cir.1981).

---

**2.** In *Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), Justice Powell, writing for a majority of the Court, upheld the regulation, in part, because it served the valid administrative goal of "identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." 107 S.Ct. at 2297. Three justices dissented. Concurring—and thus lending the necessary votes for what is the majority view—Justice O'Connor and Justice Stevens explained that the step two severity regulation is to be narrowly construed as set forth in Social Security Ruling 85–28. *Accord McDonald v. Heckler*, 795 F.2d 1118, 1122–26 (1st Cir.1986).

### III.

█ The fourth question confronts the Court in this case. The Administrative Law Judge found that Waters' impairment does not prevent her from performing work of the sort she has done in the past either as an educational counselor or as a lead paint technician. (Tr. 15) Waters disputes this conclusion, asserting that her back injury has caused scoliosis in her spine which in turn causes her headaches, back and shoulder pain, shooting pain down her arms and legs, and pain brought on by prolonged sitting or standing.[3] Complaint at 1. The Secretary admits that Waters has suffered a severe impairment resulting from her back injury, but found that her allegations of pain are not credible to the degree alleged. Defendant's Memorandum in Support of Motion for Order Affirming the Decision of the Secretary at 5.

This Court reverses the Secretary's decision and remands this case for further proceedings because the Administrative Law Judge applied an incorrect standard of law.

In his findings, the Administrative Law Judge stated:

The claimant's complaints of pain are not supported by sufficient objective medical evidence which would show that her pain is of such a severe extent as to prevent her from performing all types of substantial gainful activity and therefore are not credible.

(Tr. 15) The First Circuit directed a district court to remand a social security case to the Secretary where an Administrative Law Judge made a similar finding. *DaRosa v. Secretary of Health and Human Services*, 803 F.2d 24 (1st Cir.1986). In *DaRosa*, the First Circuit noted:

In reaching his decision, the ALJ apparently discounted [the claimant's] testimony concerning his pain and physical limitations because the extent of pain alleged was not corroborated by objective medical evidence.

*Id.* at 26 (footnote omitted). The *DaRosa* court then ruled that *Avery v. Secretary of Health and Human Services*, 797 F.2d 19 (1st Cir.1986) required more of the Secretary.

█ In *Avery*, the First Circuit interpreted the Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98-460, 98 Stat. 1794 (1984) (the "Act") and an instruction issued by the Secretary to require, first, that a claimant must establish that "a clinically determinable medical impairment [exists] that can reasonably be expected to produce the pain alleged." *Avery*, 797 F.2d at 21 (construing that part of the Act codified at 42 U.S.C. sec. 423[d][5]). Second, and not entirely consistently, the court held that the "statements of the claimant or [her] doctor, consistent with the medical findings, shall be part of the calculus. If this second provision is to have any meaning, the statements of a claimant and [her] doctor must be *additive* to clinical or laboratory findings" so long as such statements "are not inconsistent with the objective findings." 797 F.2d at 21 (emphasis added) (footnote omitted). The court further required the Secretary to follow the

---

**3.** Although the gravamen of Waters' complaint is that her disability is caused by her back problems, she also asserts that her condition is compounded by a mitral valve prolapse, high blood pressure, allergies to medicine, and extreme nervousness. Complaint at 2. The Court finds ample evidence in the record to show that Waters' high blood pressure and mitral valve prolapse appear to be adequately controlled by medication. Although the record is unclear whether Waters has ever been hospitalized due to these conditions or symptoms stemming from these conditions, it is clear that she is on medication for both conditions and has not been hospitalized because of them since 1983. (Tr. 45, 46–47) As for her allergies to medicine, such allergies are significant to her condition only in that they limit what medicines and diagnostic tests she can receive. (*E.g.*, Tr. 48, 170) With respect to her nervousness, the record reveals that several physicians have noted this condition when examining her and that she has been prescribed medicine for it. (*E.g.*, Tr. 111, 169, 223) However, nowhere in the record is this condition described as at all debilitating or otherwise inconsistent with the ability to work. The record contains no evidence that Waters has ever sought psychiatric or psychological counseling or treatment. Moreover, the Administrative Law Judge completed a Psychiatric Review Technique Form the results of which demonstrated that Waters has only a slight impairment. (Tr. 17–19) For these reasons, the Court holds that the record contains substantial evidence that these conditions have little effect on Waters' ability to work.

standard established by an instruction issued by the Secretary for the Health and Human Services Department's Program Operations Manual System, DI T00401.570 (the "POMS"), 797 F.2d at 24; *see also DaRosa*, 803 F.2d at 26. That instruction "specifically contemplate[s] a possible finding of disability in a case 'where the degree of pain alleged is significantly greater than that which can be reasonably anticipated based on the objective physical findings....' " *Avery*, 797 F.2d at 22–23 (quoting the POMS).

The *Avery* court also directed Administrative Law Judges that "when there is a claim of pain not supported by objective findings, the adjudicator is to 'obtain detailed descriptions of daily activities by directing specific inquiries about the pain and its effects to the claimant, his/her physicians from whom medical evidence is being requested, and other third parties who would be likely to have such knowledge.' " *Id.* at 23 (quoting the POMS). Clearly, the adjudicator is not to discount the claimant's testimony merely "because the extent of the pain alleged [is] not corroborated by objective medical evidence." [4] *DaRosa*, 803 F.2d at 26; *see also Avery*, 797 F.2d at 23.

In summary, *Avery* seems to stand for the following propositions: 1) subjective statements of pain can be considered by the Secretary and can support a finding of pain more severe than would be expected given the objective medical findings; 2) the Secretary remains free to assess the claimant's credibility; 3) statements of pain that are inconsistent with the objective medical findings—*e.g.*, complaints of violent headaches when medical findings indicate only pain in one's lower extremities, 797 F.2d at 21—can not be decisive evidence with respect to an individual's pain; and 4) statements of pain consistent with the objective medical findings may not be found incredible merely because they assert a level of pain beyond that reasonably indicated by those findings.

■ In the instant case, the record establishes that Waters' claim of severe pain is not inconsistent with the objective ailments that the Administrative Law Judge found afflict her. As noted, the Administrative Law Judge found that Waters suffers from "severe post traumatic chronic cervical sprain, post traumatic chronic lumbosacral sprain-strain with radiculitis, [and] post traumatic headaches originating from cervical sprain and anxiety...." (Tr. 15) A sprain is defined as "a joint injury in which some of the fibers of a supporting ligament are ruptured but the continuity of the ligament remains intact." R. Sloane, *Sloane–Dorland Annotated Medical–Legal Dictionary* 665 (1987) (hereinafter, "Sloane"). A "chronic" condition is one that persists over a long period of time.

---

4. The Secretary relies on 20 C.F.R. sec. 404.1529 which provides that no claimant will be found "disabled based on [her] symptoms, including pain, unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce those symptoms." *Avery–DaRosa* nowhere consider the interplay of this regulation, the Act, and the POMS. However, the language in Section 404.1529 is strikingly similar to that in the Act which requires a claimant to show by "medically acceptable ... diagnostic techniques" a "medical impairment ... which could reasonably be expected to produce the pain...." 42 U.S.C. sec. 423(d)(5)(A). Given the First Circuit's interpretation of the Act in *Avery* and its requirement therein that the POMS be followed, this Court does not doubt that Section 404.1529 would similarly be harmonized.

*Gonzalez Garcia v. Secretary of Health and Human Services*, 835 F.2d 1 (1st Cir.1987) (per curium), a case decided after *Avery–DaRosa*, does not aid the Secretary's cause. In *Gonzalez Garcia*, the court affirmed the Secretary's denial of benefits, upholding the Administrative Law Judge's discrediting of the claimant's subjective complaints of severe, disabling pain because there was "substantial evidence to support the ALJ's finding ... that the claimant's condition would not reasonably be expected to produce pain substantial enough to constitute a severe impairment." *Id.* at 3 (citing 20 C.F.R. sec. 404.1529). The court nowhere cites or even considers the concerns of *Avery–DaRosa* and so the distinction between the cases is not explicit. Importantly, however, the *Gonzalez Garcia* panel found that substantial evidence supported the finding of the Administrative Law Judge that the claimant's impairments were not severe. *Id.* at 2. Thus, the distinction seems to be that, absent a severe impairment under step two of the five step analysis described above, *see supra* at Section II, no number of subjective complaints of pain will suffice to establish disability where the objective medical findings establish at best a "slight abnormality." *Id.*

*Id.* at 144. Thus, the sprains from which Waters suffers would appear to be both long-lasting and quite painful. *See Long v. Martin Timber Co.*, 395 So.2d 931, 932 (La.Ct.App.1981) (noting that an individual suffering from lumbosacral sprain was found by a doctor "to be in great pain which only moderated somewhat over the ensuing year"). Indeed, a lumbosacral sprain is defined to be "a sprain involving the joint between the fifth lumbar vertebra and the sacrum ... *marked by pain (especially on movement), tenderness,* muscle spasm and limitation of motion." 2 J. Schmidt, *Attorneys' Dictionary of Medicine,* L–137 (1988) (emphasis added). It is further defined as synonomous with low back pain. *Id.* Radiculitis is defined as an "inflammation of the root of a spinal nerve...." Sloane at 601. These impairments are not in the least inconsistent with the pain of which Waters complains: back and shoulder pain, shooting pain into her extremities, and headaches. Complaint at 1.

This matter must be remanded for further proceedings because findings of the Administrative Law Judge show that he rejected her claims of pain simply because they were "not supported by sufficient objective medical evidence." (Tr. 15) *Avery–DaRosa* simply do not permit such a finding. On remand, the Administrative Law Judge is to ensure a proper record is developed. 797 F.2d at 23. Upon such record:

> The ALJ is still free to find that [Waters'] testimony regarding [her] pain ... is not credible. This result, however, must be supported by substantial evidence and the ALJ must make specific findings as to the relevant evidence he considered in determining to disbelieve the appellant.

803 F.2d at 26 (citations omitted).

Of course, this Court does not presume to instruct the Administrative Law Judge on remand how to evaluate Waters' testimony. *See Frustaglia v. Secretary of Health and Human Services,* 829 F.2d 192, 195 (1st Cir.1987) (holding that credibility assessments of witnesses are the province of the Administrative Law Judge). One can glean from the decision of the Administrative Law Judge some reasons why he may discount Waters' testimony on remand. The Court finds this apparent reasoning troubling although it does not pass on its sufficiency at this point.

First, the Administrative Law Judge noted in his decision that "at the hearing the claimant was able to sit for 40 minutes without difficulty." (Tr. 14) This general statement appears to be directly inconsistent with a more specific finding in the same decision. Elsewhere in his decision, the Administrative Law Judge reported that the entire hearing lasted only 40 minutes and that the claimant stood "for approximately five minutes." (Tr. 12) While it is the province of the Administrative Law Judge to evaluate the physical appearance of the claimant in front of him or her, on its own terms the findings of the Administrative Law Judge seem to be that Waters could not sit through a 40 minute hearing; rather, she "had to stand." (Tr. 12)

Second, the Administrative Law Judge found that the claimant had undergone a normal CATSCAN and that physicians who had examined her had found no neurological abnormality. This statement appears inaccurate. Dr. Paul W. Hugenberger, the Social Security Administration's consulting doctor, performed a physical exam on Waters on September 12, 1986. In that exam, he discovered potentially significant neurological abnormalities. On sensory examination, Waters exhibited diminished pain prick sensation in her left buttock and experienced such diminished sensation "for a distance of seven inches above the low back." (Tr. 193) Dr Hugenberger also found that Waters' right buttock was "definitely a little larger than the left buttock." *Id.* Her right knee and thigh were slightly larger than her left knee and thigh. (Tr. 194) However, her right calf was significantly smaller than her left calf. *Id.* Without question, diminished sensation is a neurological abnormality. Further, asymetrical measurements in a patient's lower extremities may indicate, among other things, muscular atrophy resulting from decreased stimulation to one or both of

these lower extremities. Dr. Hugenberger reported the raw data of his findings but nowhere offered an interpretation of what that data meant. Thus, its significance, if any, is by no means apparent. Certainly the Administrative Law Judge—like this Court—is incompetent to attempt to determine its significance on his own.

■ Third, and finally, the Administrative Law Judge noted that Waters "testified that she is capable of lifting two shopping bags at a time, doing housework, driving short distances and crocheting." Many circuit and district courts have held that such evidence is insufficient to establish the ability to engage in substantial gainful activity. *E.g., Damron v. Secretary,* 778 F.2d 279 (6th Cir.1985) (claimant could do minimal dusting and prepare meals); *Nettles v. Schweiker,* 714 F.2d 833, 837 (8th Cir.1983) (claimant could take short walks, watch television and drive a car infrequently for short distances); *McDonald v. Schweiker,* 698 F.2d 361, 363 (8th Cir.1982) (claimant could start breakfast, start washing dishes, put laundry in the washing machine, and feed her children); *Smith v. Califano,* 637 F.2d 968, 971–72 (3d Cir. 1981) (claimant could shop and still hunted) (noting that "[i]t is well established that sporadic or transitory activity does not disprove disability"); *Waltson v. Gardner,* 381 F.2d 580, 586 (6th Cir.1967) (claimant could drive, shop for groceries, wash dishes and sweep floors); *Fulwood v. Heckler,* 594 F.Supp. 540, 543 (D.D.C.1984) (claimant could shop, cook, occasionally drive, visit relatives, serve as a church deacon, wash dishes, and sweep floors); *Quinones v. Secretary of Health and Human Services,* 567 F.Supp. 188, 191 (S.D.N.Y.1983) (claimant could drive for one and one-half hours). Indeed, "[d]isability does not mean that a claimant must vegetate in a dark room exluded from all forms of human and social activity." *Smith,* 637 F.2d at 971. Further, with respect to Waters' activities, such "sporadic and transitory activities may demonstrate not [her] ability but [rather her] inability to engage in substantial gainful activity." *Willem v. Richardson,* 490 F.2d 1247, 1249 n. 4 (8th Cir.1974) (quoting *Wilson v. Richardson,* 455 F.2d 304, 307 [4th Cir.1972] ). This is so because such tasks can be performed intermittently, when the individual is not experiencing severe pain or before the pain caused by such activity becomes overwhelming. Thus, such tasks do not require the sustained effort necessary for any substantial, sustained, and regular gainful employment. *Fulwood,* 594 F.Supp. at 543. In any event, this Court would be reluctant to make an admission out of a necessity. Women such as Waters, struggling to survive on general relief, may achieve what they accomplish, in the face of pain that the Secretary would otherwise consider disabling, simply because life affords them no choice. Such misfortune (and courage) should not weigh on the scales against them.

Moreover, the full record of Waters' testimony significantly undercuts the Administrative Law Judge's characterization of the evidence. For example, with respect to housework, a fairer characterization of the evidence is that the record reveals only that Waters does a limited amount, with difficulty, as the following passage from her hearing reveals:

Q. Are you able to do your housework?

A. Not fully—I have to go slow—

Q. Slowly?

A. Yea, like I can't mop. That's too much. I do a little sweeping—

Q. Do you do the wash—throw the clothes in and press the button?

A. Yes.

(Tr. 40) With respect to driving, Waters testified that she did it only "[w]hen I have to," apparently because it is painful. (Tr. 41) She therefore only drives once or twice a week and plans her shopping to avoid extra trips. (Tr. 41)

Not discussed by the Administrative Law Judge in his decision was Waters' further testimony which, if credited—and the Administrative Law Judge did not discredit it for any permissible reason—reveals a woman of very limited activity. Waters leaves her home primarily for necessities: to go to the store, the doctor, or occasionally to church. She ventures forth for a walk only

in good weather. (Tr. 43–44) She has difficulty riding public transportation. (Tr. 42) She never take trips or eats out in restaurants. (Tr. 44) Despite the fact that her best friend was in the hospital at the time of the hearing, she rarely visited her because it was so difficult for her to get out; she therefore relied primarily on the phone. (Tr. 45) When she cooks, she tries to prepare enough food to last several days, presumably to minimize her work. *Id.* She requires bed rest "a lot" because of her back. (Tr. 43) As the court found in *Fulwood,* the Administrative Law Judge's finding that Waters' "performance of these activities renders [her] disability claim not credible is illogical and simply runs counter to common sense under the facts of this case." 594 F.Supp. at 543; *see also Nettles,* 714 F.2d at 837 (holding that the claimant's credibility was not undermined by his revelation of limited activity when the full record revealed the many hobbies and household tasks he could no longer perform).

This review of the evidence establishes that, to find Waters still capable of performing her old work, the Administrative Law Judge must satisfactorily address the severely limited physical abilities her testimony, if not discredited, reveals her to possess. *See Peters v. Bowen,* No. 87–1811–Y, slip op. at 13–14, 1988 WL 156177 (D.Mass. Sept. 13, 1988).

### IV.

The matter is REMANDED to the Secretary for further proceedings consistent with this Memorandum and Order.