DECISION
Before this Court is the appeal by Lorraine Maddalena (Plaintiff) of the determination by a Hearing Officer of the Rhode Island Department of Human Services (Defendant/DHS), denying Plaintiff's application for Medical Assistance (MA). Plaintiff seeks reversal of DHS's denial of benefits. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 FACTS AND TRAVEL
On February 5, 2002, Plaintiff submitted an application for Medical Assistance to the Rhode Island Department of Human Services, the agency charged with the responsibility of awarding such assistance.Administrative Hearing Decision at 7; Plaintiff's Brief in Support OfReversal And/Or Remand at 1 (hereinafter Plaintiff's Brief). A fifty year-old woman with an eleventh grade education, Plaintiff had stopped working in May 2001 as a supervisor in the jewelry industry due to back pain, muscle spasms and chronic foot pain. Plaintiff's Brief at 1;Transcript of Administrative Hearing at 8 (hereinafter Transcript). Plaintiff had worked in that industry for some thirty years, and had functioned most recently as a jewelry supervisor, which required her to lift up to 100 pounds and to be on her feet for up to eight hours per day. Plaintiff's Brief at 1; Transcript at 5.
The agency's Medical Assistance Review Team (MART)[1] reviewed MA-63 forms (physician's report of examination), two AP-70 forms (self-reporting forms), doctors' notes, diagnostic testing results and physical therapy records submitted by Plaintiff, which indicated that Plaintiff suffers from an array of maladies, including diagnosed retrocalcaneal hypertrophy bursitis, chronic Achilles tendonitis, osteoporosis of the lumbar-sacral spine and osteopena of the left hip.Administrative Hearing Decision at 6-7, 8 (recounting the MART review and outlining Plaintiff's diagnoses); Plaintiff's Brief at 2. After evaluating the evidence, the MART determined that Plaintiff did not qualify as disabled as she was capable of performing sedentary work.Administrative Hearing Decision at 6-7 (discussing the MART's findings). Accordingly, the MART denied Plaintiff's eligibility for MA benefits on May 1, 2002. Id. at 7.
Plaintiff requested and received a hearing to challenge the MART's determination that she was not disabled, and thus ineligible for MA benefits, which occurred on June 20, 2002. Id. at 1, 7. The Hearing Officer sustained the MART's determination of ineligibility on August 7, 2002, and thereafter, on August 27, 2002, Plaintiff timely appealed that decision to this Court. See Administrative Hearing Decision at 11;Plaintiff's Complaint at 1.
 STANDARD OF REVIEW
Rhode Island General Laws § 42-35-15(g) governs the Superior Court's scope of review for an appeal of a final agency decision. G.L. 1956 § 42-35-15(g). The statute provides, in relevant part:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." G.L. 1956 § 42-35-15.
Sitting as an appellate court with a limited scope of review, the Superior Court justice may not substitute his or her judgment for that of the agency with respect to the credibility of the witnesses or the weight of the evidence as to questions of fact. Center for Behavioral Health v.Barros, 710 A.2d 680, 684 (R.I. 1998); Mine Safety Appliances Co. v.Berry, 620 A.2d 1255, 1259 (R.I. 1993). This directive applies even if the court may have been inclined to arrive at different conclusions and inferences upon review of the evidence and the record. JohnstonAmbulatory Surgical Assocs. v. Nolan, 755 A.2d 799, 805 (R.I. 2000) (quoting Rhode Island Pub. Telecomm. Auth. v. Rhode Island State LaborRelations Bd., 650 A.2d 479, 485 (R.I. 1994)); Barrington Sch. Comm. v.Rhode Island State Labor Relations Bd., 608 A.2d 1126, 1138 (R.I. 1992).
Additionally, as long as "substantial evidence" exists to support the agency's determination, the Superior Court must uphold the decision.Barros, 710 A.2d at 684 ("In reviewing an administrative agency's decision, the Superior Court is limited to an examination of the certified record to determine whether the agency's decision is supported by substantial evidence"); see Environmental Scientific Corp. v. Durfee,621 A.2d 200, 208 (R.I. 1993) ("The Superior Court is confined to a determination of whether there is any legally competent evidence to support the agency's decision"). The Rhode Island Supreme Court has defined substantial evidence as " `such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance.'"[2]Newport Ship Yard v. Rhode Island Comm'n for Human Rights, 484 A.2d 893, 897 (R.I. 1984) (quoting Caswell v. George Sherman Sand GravelCo., 424 A.2d 646, 647 (R.I. 1981)). Thus, only where "factual conclusions of administrative agencies . . . are totally devoid of competent evidentiary support in the record" may the Superior Court reverse. Baker v. Department of Employment Training Bd. of Review,637 A.2d 360, 363 (R.I. 1994) (quoting Milardo v. Coastal ResourcesManagement Council, 434 A.2d 266, 272 (R.I. 1981)). "Questions of law, however, are not binding upon the court and may be reviewed to determine what the law is and its applicability to the facts." Narragansett WireCo. v. Norberg, 118 R.I. 596, 607, 376 A.2d 1, 6 (1977).
 DEPARTMENT OF HUMAN SERVICES
The Department of Human Services exists as an agency within the Executive Branch. G.L. 1956 § 42-12-1 et seq. Pursuant to § 42-12-4
of the Rhode Island General Laws, DHS manages federally and state funded public assistance programs, one of which provides MA to persons who qualify for the benefits under § 40-8-3. G.L. 1956 § 42-12-4
(providing that "The department of human services shall have supervision and management of . . . [a]ll forms of public assistance under the control of the state"); G.L. 1956 § 40-8-3 (outlining eligibility requirements for medical care benefits); see G.L. 1956 § 40-8-1
(declaration of policy). In order to receive federal funding for the MA program, DHS must "establish income and resource rules, regulations, and limits in accordance with title XIX of the federal Social Security Act,42 U.S.C. § 1396 et seq., as applicable to the medically needy only applicants and recipients." G.L. 1956 § 40-8-3; 42 U.S.C. § 1396
(mandating that "[t]he sums made available under this section shall be used for making payments to States which have submitted, and had approved by the Secretary, State plans for medical assistance"); see G.L. 1956 § 40-8-13 (empowering DHS Director to create rules and regulations in conformity with 42 U.S.C. § 1396 et seq.). Thus, when defining "disabled" and creating eligibility requirements, the DHS must promulgate rules that adhere to the federal definitions and guidelines as set forth in federal statutes and regulations. 42 U.S.C. § 1396 et seq.;
20 C.F.R. § 416.901-998.
Section 0352.15 of the DHS Manual outlines the policy relating to eligibility based on disability for MA benefits. See Rhode IslandDepartment of Human Services Manual § 0352.15 (hereinafter DHSManual); Administrative Hearing Decision at 2 (outlining § 0352.15 regarding eligibility based on disability). Mirroring federal provisions, the DHS policy provides, in relevant part:
 "To be eligible for Medical Assistance because of permanent or total disability, a person must have a permanent physical or mental impairment, disease or loss, other than blindness, that substantially precludes engagement in useful occupations or appropriate activities (for children) within his/her competence.
 A physical or mental impairment is an impairment which results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable, clinical and laboratory diagnostic techniques." DHS Manual § 0352.15; see 42 U.S.C. § 1382c (a)(3) (2003).
For an individual to qualify as "disabled," the person must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted, or can be expected to last for a continuous period of not less than twelve (12) months . . . ." DHSManual § 0352.15; see 42 U.S.C. § 1382c (a)(3). In addition, § 0352.15.05 provides that "[w]hether or not an impairment . . . constitutes a disability, as defined in Section 0352.15, is determined from all the facts of that case," with primary consideration given to the severity of the impairment, and further consideration given to the individual's age, education and work experience. DHS Manual §§ 0352.15; 0352.15.05.
To determine whether an applicant qualifies as "disabled" for the purposes of MA eligibility, a Hearing Officer engages in a five-step sequential inquiry, which follows the five-step federal process enunciated in 20 C.F.R. § 416.920. Compare 20 C.F.R. § 416.920with DHS Manual §§ 0352.15; 0352.15.05; 0352.15.15; 0352.15.20. The Hearing Officer asks:
 1. Is the claimant engaged in substantial activity?
 2. If not, is the impairment severe?
 3. If severe, does it meet or equal an impairment listed in the Supplemental Security Income (SSI) regulations?
 4. If it does not meet or equal SSI regulations, does the impairment prevent the claimant from doing past relevant work?
 5. Considering age, education, work experience and residual functional capacity, does the impairment(s) prevent the claimant from doing other work in the national economy?
See 20 C.F.R. § 416.920; DHS Manual §§ 0352.15; 0352.15.05; 0352.15.15; 0352.15.20; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (outlining five-step process enunciated in 20 C.F.R. § 416.920). Because of the sequential nature of this five-pronged analysis, a negative determination at any one of the steps (except for step three) forecloses a finding of "disabled." McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986); see Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (observing that "All five steps are not applied to every applicant, as the determination may be concluded at any step along the process").
Finally, although the claimant bears the burden of proof as to the first four steps, the burden shifts to DHS at Step Five to demonstrate that a claimant can perform work in the national economy other than his or her past relevant work. Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993) (noting that at Step Five, "the burden shifts to the Secretary to show that the claimant can perform some other job"). In determining whether an applicant can perform other work, the Hearing Officer may rely on either the Medical-Vocational Guidelines (the Grid) or testimony of a vocational expert (VE).[3] Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999) ("There are two ways for the Commissioner to meet the burden of showing that there is other work in `significant numbers' in the national economy that claimant can perform: (a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2").
 HEARING OFFICER'S DETERMINATION THAT PLAINTIFF IS NOT DISABLED
Upon an analysis of Plaintiff's medical records, the MART's findings that Plaintiff "is capable of performing sedentary work," testimony and observations at the June 20, 2002 hearing, and a review of the Medical Vocational Rule 201.11 (the Grid), the Hearing Officer concluded that Plaintiff did not qualify as "disabled" as she "should be capable of performing sedentary work." Administrative Hearing Decision at 6-11. The Hearing Officer noted that, as to the first step in the five-step analysis, Plaintiff "testified that she is not presently employed." Id.
at 7. Thereafter, the Hearing Officer found that Plaintiff's impairments were severe under Step Two because Plaintiff "has chronic back pain, which her physician notes would preclude any type of heavy work and the impairment is expected to last a period of twelve months." Id.
Pursuant to Step Three, after examining Plaintiff's medical diagnoses and physicians' reports relative to Plaintiff's back, leg, feet and chest impairments, the Hearing Officer concluded that Plaintiff's "impairments do not meet or equal the listings" in the SSI regulations. Id. at 7-9. Implicit in the findings of the Hearing Officer, given the nature of these impairments, was her judgment that Plaintiff could not perform her past relevant work, which involved heavy lifting and required Plaintiff to be on her feet for up to eight hours per day. See id. at 8-9; Plaintiff'sBrief at 1; Transcript at 5.
Proceeding to Step Five, the Hearing Officer addressed Plaintiff's Residual Functional Capacity (RFC), which reflects the physical and mental work activities in which the claimant may still engage despite his or her impairments. 20 C.F.R. § 416.945 (a) (noting that the RFC "is what you can still do despite your limitations"). The Hearing Officer determined that, in light of Plaintiff's age, education, work experience, treating physicians' recommendations of physical therapy and examination of the Grid, Plaintiff "should be capable of performing sedentary work and is therefore, not considered to be disabled."Administrative Hearing Decision at 9. In reaching her conclusion, the Hearing Officer further noted Plaintiff's physicians' reports that "she is able to maintain somewhat normal functioning, as long as she is not stressed with activity to her feet and is not required to do any type of heavy activity" and "with appropriate care hopefully she can return to functional work status." Id.
a. Sedentary Work
Plaintiff contends that the Hearing Officer's finding that Plaintiff was capable of performing sedentary work was based on error of law and is unsupported by substantial evidence. Plaintiff's Brief at 5. Because sedentary work requires an individual to be seated for at least six hours in an eight-hour work day, and because the uncontroverted assessments by Plaintiff's physician indicated that she could sit for only four hours, Plaintiff argues that the Hearing Officer's conclusion that Plaintiff can perform sedentary work was erroneous, contrary to substantial evidence and inconsistent with Social Security Ruling (SSR) 83-10 and federal regulations. Id. at 7-8.
In order to perform a full range of sedentary work, an individual must be capable of "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 416.967(a). Further, "[a]lthough a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." Id. Social Security Ruling 83-10 elaborates on this definition and explains that:
 "By its very nature, work performed primarily in a seated position entails no significant stooping. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions. `Occasionally' means occurring from very little up to one-third of the time. Since being on one's feet is required `occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles." SSR 83-10 (emphasis added).[4]
Thus, where an individual cannot sit for at least six hours in an eight-hour work day, he or she is incapable of performing a "full range" of sedentary work. Chester v. Callahan, 193 F.3d 10, 13 (1st Cir. 1999) (the "assessment limited claimant to four hours of sitting — less than the six hours usually required for sedentary work"); Rivera v.Heckler, 618 F. Supp. 1173, 1178 (S.D.N.Y. 1985); Mazzella v. Secretaryof U.S. Dep't of Health Human Servs., 588 F. Supp. 603, 607 (S.D.N.Y. 1984) (observing that "even if plaintiff could sit for five hours per day, as the Secretary concluded, he would still be unable to satisfy the physical exertional requirements for sedentary work"); VanHuss v. Heckler, 572 F. Supp. 160, 166 (W.D.Va. 1983). Such a limitation that restricts one's ability to perform the full range of sedentary work does not necessarily mandate a finding of "disabled," however, and where the full range of sedentary work is not "significantly compromised" by the limitation, a finding of "not disabled" is appropriate. SSR 83-12(3) (noting that "Technically, because of the restriction, this person cannot perform the full range of sedentary work. However, this slight compromise within the full range of sedentary work . . . leaves the sedentary occupational base substantially intact. Using the rules as a framework, a finding of `Not disabled' would be appropriate").
In the present case, although Plaintiff's treating physician of ten years, Dr. Bigelli, limited Plaintiff's ability to sit to only four hours maximum in an eight-hour day, Plaintiff "is capable of walking for a period of 1 hour, . . . standing for a period of 1 hour, reaching for a period of 4 hours, and is capable of lifting 10 lbs for a period of 1 hour, sitting and standing intermittently for a period of 2 to four hours with breaks and can occasionally bend and stoop, and carry and lift."Administrative Hearing Decision at 8 (outlining Dr. Bigelli's findings);Physical Examination Report of Dr. Angelo J. Bigelli (June 2, 2002). Dr. Lombardi, who has treated Plaintiff for eight years, echoed these findings in his February 2002 assessments, and found that Plaintiff "is capable of walking for two hours, . . . standing for a period of 1 hour, bending for a period of 1 hour" as well as "bending and stooping occasionally, lifting and carrying occasionally, and standing and sitting intermittently for a period of 3 hours in an 8-hour work day."Administrative Hearing Decision at 8 (recounting Dr. Lombardi's findings); Physical Examination Reports of Dr. Anthony J. Lombardi
(February 4 26, 2002). Because Plaintiff is capable of performing the other exertional tasks required by sedentary work, her ability to sit for a maximum of four hours as opposed to six does not appear to "significantly compromise" her ability to perform sedentary work in the economy. SSR 83-12(3). As such, the Hearing Officer's determination was neither erroneous as a matter of law nor unsupported by substantial evidence.
b. Treating Physicians' Opinions
Plaintiff alleges that the Hearing Officer improperly rejected the opinions of Plaintiff's physicians. Plaintiff's Brief at 8-10. Further, Plaintiff insists, the Hearing Officer culled out the physicians' assessments which reflected less favorably on Plaintiff's claims, while "ignoring the spirit of the record as a whole." Id. at 9.
The opinion of a claimant's treating physician is entitled to controlling weight, so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record."20 C.F.R. § 416.927(d)(2). Here, the Hearing Officer accepted the findings of Plaintiff's physicians after a thorough review and full consideration of the doctors' reports, and these findings led her to conclude that Plaintiff could perform sedentary work. AdministrativeHearing Decision at 7-11 (reviewing opinions and findings of Plaintiff's physicians). Contrary to Plaintiff's assertion, the Hearing Officer did not ignore evidence favorable to Plaintiff's claim; instead, the Hearing Officer engaged in a comprehensive review of the medical evidence and drew her conclusions from that total evidence. Id. at 7-9.
Further, this Court's limited role requires deference to the Hearing Officer's factual findings and conclusions and permits only a determination of whether substantial evidence exists to support the Hearing Officer's decision. Barros, 710 A.2d at 684; Mine SafetyAppliances Co., 620 A.2d at 1259. Such evidence does exist in the present case, and because the Hearing Officer's findings were not "totally devoid of competent evidentiary support in the record," the Hearing Officer committed no error in her assessments of and reliance upon the opinions of Plaintiff's physicians. Baker, 637 A.2d at 363.
c. Examination of Plaintiff's Pain Case
Plaintiff urges that the Hearing Officer improperly assessed Plaintiff's pain. Plaintiff's Brief at 10-13. Contending that the Hearing Officer misread the record, improperly relied on her own personal observations of Plaintiff at the hearing, and failed to give enough credibility to Plaintiff's testimony, Plaintiff asserts that the Hearing Officer erred in concluding that sufficient evidence does not exist to support Plaintiff's claim of "constant pain." Id. at 11-13.
A claimant's subjective symptoms of pain are considered in determining whether a claimant is disabled. 20 C.F.R. § 416.929(a) (noting that "we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence, and other evidence"). However, mere "statements about your pain or other symptoms will not alone establish that you are disabled." Id.; see DHS Manual § 0352.15 (advising that "[s]tatements of the applicant, including the individual's own description of the impairment (symptoms) are, alone, insufficient to establish the presence of a physical or mental impairment"). In addition,
 "there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled." 20 C.F.R. § 416.929 (a).
Symptoms, such as pain, "will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present."20 C.F.R. § 416.929(b). In evaluating the intensity and persistence of pain symptoms, and determining the extent to which those symptoms limit an individual's capacity for work, a hearing officer considers "all of the available evidence, including your medical history, the medical signs and laboratory findings, and statements from you, your treating or examining physician . . . or other persons about how your symptoms affect you." 20 C.F.R. § 416.929(c). Other factors relevant to an analysis of pain symptoms are
 "(i) Your daily activities;
 (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
 (iii) Precipitating and aggravating factors;
 (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
 (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
 (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
 (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 416.929(c)(3).
A hearing officer also "will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your medical history, the medical signs and laboratory findings, and statements by your treating or examining physician . . . about how your symptoms affect you." 20 C.F.R. § 416.929(c)(4). Credibility determinations as to a claimant's subjective assertions of pain will not be disturbed by a reviewing court unless the determinations are "patently wrong." Pope, 998 F.2d at 487 ("We will not disturb a credibility finding unless it is `patently wrong in view of the cold record'") (quoting Imaniv. Heckler, 797 F.2d 508, 512 (7th Cir. 1986)); see Tyra v. Secretary ofHealth Human Servs., 896 F.2d 1024, 1030 (6th Cir. 1990) (noting that with respect to assessments of subjective complaints of pain, "the reviewing court should show deference to the decision of the administrative law judge in assessing credibility").
In the present case, the Hearing Officer determined that "given the medical evidence, the impairments could cause [Plaintiff] to experience pain." Administrative Hearing Decision at 9. However, with respect to the second inquiry regarding the intensity and persistence of symptoms, the Hearing Officer found that "the intensity, persistence and limiting effects of the pain that [Plaintiff] describes does not seem plausible given the medical evidence." Id. Finding incredible Plaintiff's asserted symptoms of continuous pain, the Hearing Officer determined that "there is not sufficient supporting evidence of [Plaintiff's] claim" that she experiences "constant pain." Id. at 11. The Hearing Officer further found that "[t]he evidence also indicates that [Plaintiff] has not followed through with the recommended medical treatment and there is no supportive evidence that indicates that [Plaintiff] could not perform some type of sedentary work." Id.
In support of her conclusion, the Hearing Officer noted that despite Plaintiff's testimony that "she can not stand or sit for a period of over 15 minutes time," and that she "hurt all of the time, it's constant pain," Dr. Bigelli's June 2002 report indicated that "in an 8-hour work day [Plaintiff] is capable of standing for a period of 1 hour and sitting for a period of 4 hours." Administrative Hearing Decision at 10; PhysicalExamination Report of Dr. Angelo J. Bigelli (June 2, 2002).
Similarly, the Hearing Officer took note of other discrepancies in Plaintiff's self-report forms and her testimony. Administrative HearingDecision at 10. For example, in her self-report, Plaintiff asserted that "[e]ven if I sit more than one hour or stand more than an hour, I hurt," but in her testimony, she explained that "she couldn't tolerate standing or sitting for more than a 15-minute period." Id.; Transcript at 19. Likewise, although Plaintiff reported that she does not engage in housework, such as vacuuming, laundry, dusting and making beds, when asked on the self-report form how often she needs help with housework, Plaintiff responded only "sometimes." Administrative Hearing Decision at 10.
In addition, the Hearing Officer highlighted the fact that, after three physical therapy sessions, Plaintiff expressed to her physical therapist that "I'm doing o.k. I guess." Id. at 11. In contradiction of this evidence, however, Plaintiff testified at the hearing "that the physical therapy she had last fall did not help her." Id. Further bolstering the Hearing Officer's determination of Plaintiff's lack of credibility in this respect was Dr. Bigelli's observation that physical therapy and other treatments have "benefited her to a certain degree, but then pain returns when the therapy is stopped." Id. at 11.
The Hearing Officer also considered Plaintiff's weekly and monthly activities, such as attending church for a period of two hours, going to a restaurant for two hours, visiting with friends and family for a period of one to two hours, shopping for one hour, and keeping doctor's appointments for periods of one to two hours, as weakening the credibility of her claims of constant pain. Id. at 10. Although engaging in such activities does not necessarily demonstrate a lack of disability, the Hearing Officer properly could have considered these activities when weighing Plaintiff's credibility. See 20 C.F.R. § 416.929(c)(3)(i), (4) (noting that among factors relevant to symptoms of pain is the individual's "daily activities"); Waters v. Bowen, 709 F. Supp. 278, 284 (D.Mass. 1989) (collecting cases and observing that the claimant's ability to carry "two shopping bags at a time, doing housework, driving short distances and crocheting" is insufficient evidence "to establish the ability to engage in substantial gainful activity"); Smith v.Califano, 637 F.2d 968, 971-72 (3d Cir. 1981) (recognizing that "Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity. . . . It is well established that sporadic or transitory activity does not disprove disability").
Lending credence to these apparent inconsistencies were the Hearing Officer's personal observations at the hearing that Plaintiff "sat without complaint or visible distress for a period of approximately 40 minutes" and "remained standing throughout the remainder of the hearing," which totaled approximately forty-five minutes. Administrative HearingDecision at 10 ("She remained standing throughout the remainder of the hearing . . . . The audiotape runs for 30 minutes on each side. We used one full side of the tape and approximately 15 minutes of the other side"). Although a hearing officer "is not free to reject a claimant's credibility on account of the claimant's failure to sit and squirm during the hearing," he or she "is permitted to take notice of a claimant's demeanor during an administrative hearing." Cline v. Sullivan,939 F.2d 560, 567-68 (8th Cir. 1991); see Frustaglia v. Secretary ofHealth Human Servs., 829 F.2d 192, 195 (1st Cir. 1987) (recognizing that "The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference"). In the present case, the Hearing Officer simply noted Plaintiff's demeanor at the hearing as another example reflecting Plaintiff's incredibility.
Finally, although this Court recognizes the proposition advanced by Plaintiff that testimony of a long-term employee should be afforded substantial weight, this Court finds that the Hearing Officer's determination as to Plaintiff's credibility is supported by substantial evidence. The number of inconsistencies and the opinions of Plaintiff's physicians that "she is able to maintain somewhat normal functioning, as long as she is not stressed with activity to her feet and is not required to do any type of heavy activity of a work-type nature," and "with appropriate care hopefully she can return to functional work status," provided substantial evidence for the Hearing Officer to arrive at her determination. Mindful of the deference afforded to the Hearing Officer as to credibility assessments, this Court finds that the Hearing Officer was entitled to draw conclusions as to Plaintiff's credibility regarding her assertions of pain based on the multiple discrepancies, and further concludes that substantial evidence supports the Hearing Officer's decision in this regard. Pope, 998 F.2d at 487.
 CONCLUSION
After a review of the entire record, this Court finds that the Hearing Officer's decision was supported by reliable, probative, and substantial evidence on the record; was not arbitrary or capricious or characterized by an abuse of discretion; and did not constitute an unwarranted exercise of discretion. Substantial rights of Plaintiff have not been prejudiced. Accordingly, the decision of DHS to deny Plaintiff MA benefits is affirmed.
Counsel shall prepare appropriate order for entry.
[1] The MART's duties include "analyz[ing] the complete medical data, social findings, and other evidence of disability submitted by or on behalf of the applicant" and "issu[ing] a decision on whether the applicant meets the criteria for disability based on the evidence submitted." Rhode Island Department of Human Services Manual § 0352.15.20; Administrative Hearing Decision at 5 (outlining § 0352.15.20).
[2] The Rhode Island Supreme Court has similarly defined "legally competent evidence." Arnold v. Rhode Island Dept. of Labor TrainingBd. of Review, 2003 R.I. LEXIS 71, *5 (Mar. 26, 2003) (defining legally competent evidence as " `relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance'") (quoting Rhode IslandTemps, Inc. v. Department of Labor Training Bd. of Review,749 A.2d 1121, 1125 (R.I. 2000)).
[3] The Grid "is a chart which classifies a claimant as disabled or not disabled, based on the claimant's physical capacity, age, education, and work experience" and aims to "simplify the determination of disability and to improve its consistency." Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987).
[4] Social Security Rulings (SSRs) "are interpretive rules intended to offer guidance to agency adjudicators," and "[w]hile they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs `binding on all components of the Social Security Administration.'" Laurer v. Apfel, 169 F.3d 489, 492 (7th Cir. 1999) (quoting 20 C.F.R. § 402.35(b)(1)).