**Georgine IRELAN, Appellant,**

v.

**Jo Anne BARNHART, Commissioner of Social Security.**

No. 03–1908.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Oct. 28, 2003.

Decided Dec. 4, 2003.

Judith A. Dexter, Law Offices of Judith A. Dexter, Bethlehem, PA, for Appellant.

Margaret J. Krecke, Philadelphia, PA, for Appellee.

Before SCIRICA, Chief Judge, NYGAARD and AMBRO, Circuit Judges.

OPINION

AMBRO, Circuit Judge.

Georgine Irelan appeals the District Court judgment affirming the denial of

supplemental security income and disability insurance benefits by the Commissioner of the Social Security Administration. At issue is whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §§ 405(g); *Plummer v. Apfel,* 186 F.3d 422, 427 (3d Cir.1999). Because we conclude that decision is supported by substantial evidence, we affirm.

## I.

### Facts and Procedural History

Irelan applied for supplemental security income and disability insurance benefits in 1998.[1] Irelan, age 51 at the time, alleged that she was disabled by pain in her neck, shoulder and arm from cervical disc disease, and by other gastrointestinal and gynecological diseases. An administrative law judge ("ALJ") collected evidence at a hearing in June 2000, and issued a decision denying Irelan's application in January 2001. In his decision, the ALJ found that Irelan's cervical disc disease, a severe impairment, restricted her from: (1) lifting and carrying more than 10 pounds (but occasionally carrying up to 10 pounds); (2) overhead work activity with both upper extremities; (3) use of vibrating tools and machinery; (4) frequent use of arms for work activity (but occasional use of arms); (5) frequent driving; and (6) cold and damp work environments. However, the ALJ determined that Irelan retained residual functional capacity to perform light sedentary work and was thus capable of performing her past relevant work as a data entry supervisor as well as other jobs in the national economy.

In making his findings regarding Irelan's functional limitations, the ALJ discounted the treating physician's opinion that Irelan was restricted in her ability to sit and stand for sustained periods of time. The ALJ found that objective medical evidence did not support this opinion, which was inconsistent with the opinions of several consulting physicians who found Irelan was not restricted in her lower extremities. The ALJ also found that Irelan's own testimony regarding her functional limitations was not credible. In making his findings regarding Irelan's ability to return to past relevant work or other work in the national economy, the ALJ relied on a vocational expert's testimony.

In January 2002, the Appeals Council denied Irelan's request for review of the ALJ's decision, making the ALJ's determination an appealable final decision of the Commissioner. Irelan appealed the Commissioner's decision to the United States District Court for the Eastern District of Pennsylvania. There the parties filed cross-motions for summary judgment. In October 2002 Magistrate Judge Jacob P. Hart filed a sixteen-page Report and Recommendation that the District Court grant the Commissioner's motion and deny Irelan's. Judge Eduardo Robreno of the District Court adopted the Magistrate's Report in an order filed in January 2003. Judge Robreno supported his Order with a thirty-seven-page memorandum. *Irelan v. Barnhart,* 243 F.Supp.2d 268 (E.D.Pa. 2003).

## II.

### Standard of Review

Although our review of the District Court's order is plenary, "our review of the ALJ's decision is more deferential as we determine whether there is substantial

---

1. An administrative law judge had previously dismissed Irelan's 1996 application for disability insurance benefits after she did not attend a hearing. Because we affirm the District Court's decision, it is not necessary for us to resolve the parties' dispute over whether this dismissal extinguished Irelan's claim for disability insurance benefits.

evidence to support the decision of the Commissioner." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir.2001) (quoting *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir.1995). If the Commissioner's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir.1999). Thus the issue before us is whether the Commissioner's decision that Irelan was not disabled, and thus not entitled to disability benefits, is supported by substantial evidence.

## III.

### The Disability Determinations Process

Eligible disabled individuals are entitled to supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383f, and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. "Disabled individuals" are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months" and, because of this, are "unable to perform previous work ... or any other work which exists in the national economy." *Id.* §§ 423(d)(1)(A), 1382c(a)(3)(A), (B).

The Social Security Administration has established a five-step inquiry to determine whether a claimant is eligible for benefits under the Act. A claimant must identify that: (1) she is not engaged in substantially gainful activity; (2) she suffers from a severe medical impairment; (3) her impairment is listed by the Administration as one creating a presumption of disability; (4) if the impairment is not listed, that the impairment nonetheless prevents her from doing her past relevant work. If the claimant satisfies this burden, then the Commissioner must grant benefits unless she can demonstrate (5) that there are jobs in the national economy that the claimant can perform. 20 C.F.R. §§ 404.1520, 416.920.

## IV.

### Analysis of Irelan's Arguments on Appeal

**A. The Commissioner's functional limitations findings are supported by substantial evidence.**

Irelan argues on appeal that the Commissioner erred in (1) discounting the opinion of her treating physician, Dr. Frye, who suggested that Irelan was restricted from standing and sitting for sustained periods of time and in (2) relying on the opinion of consulting physician, Dr. Vernick, that Irelan's functional limitations relate only to head positioning and use of upper extremities. However, the District Court correctly concluded that substantial evidence in the record supports the Commissioner in both of these decisions.

**1. The Commissioner properly discounted the treating physician's opinion.**

A treating physician's opinion is entitled to controlling weight if it is consistent with the other substantial evidence in the record and is supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Irelan argues that Dr. Frye's opinion is both consistent and supported. We agree with the District Court that it is neither.

a. **Dr. Frye's opinion regarding Irelan's functional limitations is inconsistent with other evidence in the record.**

Dr. Frye's opinion is inconsistent with the record as a whole, including opinions of eight physicians, none of whom corroborated her opinion that Irelan's functional limitations. Irelan argues that, under *Cotter v. Harris,* 642 F.2d 700 (3d Cir.1981), the medical opinions not mentioned in the Commissioner's decision cannot be considered substantial evidence to support the Commissioner's decision. In *Cotter,* we required from the written decision of an ALJ "not only an expression of evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Id.* at 705.

In this case, however, the ALJ's written decision clearly indicates that substantial evidence in the record—namely, the opinions of Drs. Vernick, Olewiler, and DiConnetto, as well as several clinical test results—conflicts with Dr. Frye's opinion. The fact that the ALJ's written decision could have referenced five more physicians' opinions as inconsistent with Dr. Frye's is hardly reversible error.

Next Irelan argues that the opinions of those physicians who only examined Irelan once or twice should not supplant the opinions of Dr. Frye, Irelan's long-term treating physician. But the District Court correctly determined that length of treatment relationship is just one of several factors the Commissioner should use in weighing a physician's opinion. The Commissioner can also consider the physician's expertise and specialty, the supportability of his or her opinion, and the consistency of that opinion with other evidence in the record. 20 C.F.R. §§ 404.1527(d), 416.927(d). Thus, the opinions of physicians who based their evaluations on only one examination can outweigh the opinion of a long-term treating physician when, as in this case, those opinions are rendered by specialists, are supported with clinical evidence, and are consistent with each other.

Irelan also argues that the medical opinions rendered several years before her initial 1996 application should not be considered substantial evidence inconsistent with Dr. Frye's opinion. But the ALJ did not indicate that he considered any of the 1992 opinions in this way. Rather, according to the ALJ's written decision, he relied on the findings of Dr. DiConcetto's 1998 examination and Dr. Olewiler's 1996 examination.

Thus we find all of Irelan's arguments that Dr. Frye's opinion is consistent with substantial evidence in the record to be unpersuasive.

b. **Dr. Frye's opinion regarding Irelan's functional limitations is not supported by clinical and laboratory diagnostic techniques.**

The District Court also correctly found that Dr. Frye's opinion is not supported by objective medical or diagnostic testing or clinical findings. Rather, her opinion is based on Irelan's subjective complaints of pain. For example, there is simply no medical evidence–in either Dr. Frye's opinions or the opinions of other specialists that are in Dr. Frye's file–for her recommendations that Irelan is limited in her capacity to sit and stand.

Irelan argues that it is "reasonable to assume that a person with chronic neck, shoulder, and arm pain and restriction of neck mobility, would not be able to stand for extended periods." If this were true, one or more of the eight physicians who examined Irelan's neck, shoulder and arm pain would have made that assumption. None did.

**2. The Commissioner properly considered the opinion of a consulting physician, Dr. Vernick.**

▮ The District Court correctly determined that the Commissioner gave appropriate weight to Dr. Vernick's opinion using the framework at 20 C.F.R. §§ 404.1527(d), 416.927(d). Under these provisions, the factors in determining the weight of a medical opinion rendered by a non-treating source are the (1) nature of the examining relationship, (2) the nature of the treating relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, and (5) the specialization of the physician offering the opinion. *Id.* Temporal remoteness could also be considered as one of the miscellaneous factors that affect the weight the Commissioner should give to a non-treating source's opinion. 20 C.F.R. §§ 404.1527(d)(6), 416.927(d)(6). The District Court concluded that: (1) Dr. Vernick was engaged to conduct independent medical examinations of Irelan; (2) he did so on two occasions in a two year period; (3) his opinions are fully supported as they detail Irelan's subjective complaints, personal and work history, the results of his own physical examination, and his conclusions as to the physical limitations each test revealed; (4) his diagnosis of degenerative disc disease is consistent with other doctors' diagnoses; and (5) Dr. Vernick is an orthopedist–a specialist. Thus, we agree with the District Court that the Commissioner correctly gave considerable weight to Dr. Vernick's opinion, and that temporal remoteness alone does not prevent it from being substantial evidence that Irelan is not disabled.

Irelan argues that Dr. Vernick's recommendation in his 1994 report that Irelan return for a follow-up visit rendered his report equivocal and thus an inappropriate basis for the Commissioner's conclusions about Irelan's functional limitations. This argument is unpersuasive because the record contains opinions of other specialists who evaluated Irelan after Dr. Vernick did, all of which are consistent with Vernick's 1994 findings. Irelan contends that if Dr. Vernick had reevaluated her, he would have had the benefit of the MRI performed on Irelan's neck several months after her visit. But another specialist, Dr. Elias, did review the 1994 MRI, and he, like Dr. Vernick concluded that Irelan had only mild degenerative disc disease and no neurological defects that could explain limitations in her lower extremities. Thus, record evidence suggests that even if Dr. Vernick had conducted a follow-up visit after the 1994 MRI, he would not have changed his opinion.

Therefore, for the reasons stated by the District Court, the Commissioner properly considered Dr. Vernick's opinion as substantial evidence that Irelan's functional limitations relate only to head positioning and use of upper extremities, and not limitations on sitting and standing as Dr. Frye opined.

**B. The Commissioner's vocational findings are supported by substantial evidence.**

▮ Based on the testimony of a vocational expert, the Commissioner found that, given Irelan's residual functional capacity (ability to perform light, sedentary work and occasionally use her arms, but restricted from overhead work, driving, using vibrating tools, and damp environments), she could perform her past relevant work as a data entry supervisor (step 4). The District Court concluded that this finding was supported by substantial evidence because it is consistent with Irelan's own testimony of her responsibilities as a data entry supervisor, for which the VE was present. The District Court noted

that nowhere in the record did Irelan indicate that she could no longer perform particular work requirements as a result of her impairment.

The Commissioner also found that Irelan had transferable skills that qualify her for other jobs in the national economy, even with her limitations, including the teaching or selling of computer software (step 5). Though not mentioned by the ALJ in his written decision, the VE also testified that, even without transferable skills, Irelan was capable of performing other non-skilled jobs in the national economy, including information clerk, interviewer, hostess, hotel clerk, cashier, and attendant (such as at a recreational facility).

In her appeal, Irelan argues that the VE's testimony cannot constitute substantial evidence to support the Commissioner's vocational findings. First she complains that the VE did not provide numbers from the Dictionary of Occupational Titles (DOT) at the hearing for the jobs he testified that Irelan could perform. Though he did submit a post-testimony letter to the ALJ, the DOT numbers referenced in the letter did not match the jobs about which he testified. But the Commissioner relied on the VE's hearing testimony, not his letter. And there is no legal basis for Irelan's argument that "if the claimant is to adequately test the accuracy of the VE testimony, the DOT numbers must be available." The DOT is not binding on the Commissioner. It is published by the Department of Labor as a tool. *Donahue v. Barnhart*, 279 F.3d 441, 445–47 (7th Cir. 2002). And, especially as it relates to the ALJ's decision at step 4, the DOT is irrelevant because the VE's testimony was consistent with Irelan's own description of her responsibilities as a data entry supervisor.

Irelan argues that the VE's testimony regarding the transferability of skills was not credible. Specifically, she claims that "[i]t is not reasonable to find that a data entry supervisor can tutor computer software usage, ten years after leaving the workforce and without having used computer software in more than one specific application for a specific employer." Further, software sales skills and technical software usage are not in her background.

The Commissioner may consider whether a claimant has transferable skills from her past work to determine if she or he meets the requirements for other types of work in the national economy. According to the Social Security Administration regulations, transferability is "most probable and meaningful among jobs in which (i) the same or lesser degree of skill is required; (ii) the same or similar tools or machines are used; and (iii) the same or similar raw materials, products, processes, or services are involved." 20 C.F.R. §§ 404.1568(d)(2), 416.968(d)(2). The regulations recognize that there are varying degrees of transferability. "A complete similarity of all three factors is not necessary for transferability." 20 C.F.R. §§ 404.1568(d)(3), 416.968(d)(3).

Here substantial evidence in the record establishes Irelan's familiarity with computers and supports the Commissioner's finding of transferability to other jobs regarding computers. She learned how to use a personal computer, designed the screens for other employees to use, learned various applicable software programs, and trained other employees to use them. Furthermore, record evidence suggests that Irelan was capable of performing other, non-skilled work in the national economy, as well as her past relevant work as a data entry supervisor. Therefore, Irelan's challenge to the Commissioners's transferability findings do not warrant re-

versal or remand of the Commissioner's decision.

Irelan also complains about language in the District Court's opinion regarding the Commissioner's finding that she could return to her past relevant work as a data entry supervisor. The District Court noted that "[n]one of these comments suggest that Irelan cannot perform full-time, sedentary work, but rather that she can, when and if provided with proper accommodations." Irelan argues that this language impermissibly invokes the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.* In context, however, it is clear that this language is not a reference to ADA-style accommodations, but rather to the functional limitations suggested by Dr. Vernick.

For these reasons, the Commissioner's findings at step 4 and 5 are supported by substantial evidence, as Irelan's arguments to the contrary are not persuasive.

C. The Commissioner's credibility findings are supported by substantial evidence.

■ The Commissioner found Irelan's testimony about her functional limitations to be less than fully credible, as Irelan's alleged disabling symptoms "exceed what the objective evidence and clinical findings could reasonably be expected to produce." The Commissioner also found Irelan's testimony to be "inconsistent with [her] activities of daily living which include her activities of shopping at the mall, her ability to drive a car, her visiting her daughter in Bethlehem [PA] an average of three times per week and her trips to Florida occurring about once per year."

We agree with the District Court that there is substantial evidence in the record to support the Commissioner's credibility finding. There is no medical evidence suggesting that Irelan has neurological prob-

lems that would account for her complaint that her "arms go dead." Nor does the medical record corroborate her statement that she has trouble sitting or standing.

Irelan argues that the Social Security Administration regulations prohibit the Commissioner from considering evidence of her lifestyle in determining whether her complaints are credible. But the regulation she cites in support of this argument, 20 C.F.R. § 404.1572, addresses lifestyle evidence in the context of a claimant's ability to work, not in the context of whether she is credible. That regulation provides: "Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social program to be substantially gainful activities." Irelan also undercuts her own argument by arguing in next paragraph of her brief that "all factors," including "lifestyle," must be weighed in determining a claimant's credibility about pain. She accurately cites Social Security Ruling 96–7 as authority for this principle. Thus, by Irelan's own admission, the Commissioner properly considered lifestyle evidence to support the finding regarding credibility. The lifestyle evidence cited in the Commissioner's decision (shopping, driving, traveling, *etc.*) is substantial evidence to support the conclusion that Irelan's alleged symptoms are inconsistent with her lifestyle.

D. The Commissioner's finding that Irelan does not suffer from a severe mental impairment is supported by substantial evidence.

■ Irelan disputes the Commissioner's finding that she does not suffer from a severe mental impairment. But there is no evidence in the record to support that any mental impairment is severe. While Dr. Frye's opinions suggest that Irelan suffers from depression and anxiety, she

has not referred Irelan to a mental health specialist. Nor does she suggest that Irelan's depression and anxiety contribute to any of her functional limitations.

## V.

### Conclusion

For these reasons, we find that the Commission's decision was supported by substantial evidence in the record and affirm the District Court's judgment.