Edite PIRES, Plaintiff,

v.

Michael J. ASTRUE, Commissioner of Social Security, Defendant.

Civil Action No. 07–30205–MAP.

United States District Court, D. Massachusetts.

May 14, 2008.

Karen L. Goodwin, United States Attorney's, Springfield, MA, for Defendant.

Lindsay P. Rand, Nashawaty & Rand, Braintree, MA, for Plaintiff.

*MEMORANDUM AND ORDER RE-GARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION FOR AN ORDER AFFIRMING THE DECISION OF THE COMMISSIONER* (Dkt. Nos. 5 & 7)

PONSOR, District Judge.

## I. INTRODUCTION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Edite Pires seeks reversal of a decision by Defendant, the Commissioner of Social Security, denying her application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 402 *et seq.* She argues that the disability determination did not conform to the applicable legal standards and was not supported by substantial evidence. (Dkt. No. 5.) Defendant in turn moves for an affirmation of the denial of benefits. (Dkt. No. 7.) For the reasons stated below, Plaintiff's motion will be allowed and Defendant's motion will be denied, and the case will be remanded for further proceedings.

## II. FACTS

A. *Plaintiff's Medical Condition.*

Edite Pires is a 46-year-old woman who moved to the United States from Portugal at the age of 18. (Dkt. No. 3, Tr. 88, 93, 372.) She received an education through the fourth grade in Portugal and cannot read or write in English—she testified at her administrative hearing that she can read a traffic sign, but not a newspaper or the directions on a can of soup.[1] (Tr. 371–72.) Plaintiff spent seventeen years (from 1988 through May 2005) working as a machine operator and assembler of children's games for Hasbro, Inc. in East Longmeadow, Massachusetts. (Tr. 376.)

Plaintiff has for many years suffered from both migraine headaches and depression. She has tried several different medications to treat these ailments, with some success as to the depression but less as to the headaches. (*See, e.g.,* Tr. 220, 222, 322.) In spite of these impairments, which began in approximately 1998 (Tr. 172–76), Pires maintained her employment at Hasbro until May of 2005.

Around September 21, 2004, Plaintiff began to experience pain in her right shoulder while performing repetitive tasks at work (without any specific triggering event or injury). She went to the company nurse and was switched to light duty. (Tr. 360.) However, over the next few weeks the pain spread to her neck and back.

After physical therapy and treatment with antiinflammatory medication proved unavailing, Pires' primary care physician referred her to Pioneer Spine & Sports Physicians, P.C. (Tr. 139.) At a November 17 examination, Plaintiff reported that her pain was constant and exacerbated by prolonged activity or turning her head to the right. (Tr. 270.) The exam notes indicate that she had full range of motion in her neck, but with some pain, and limited range of motion in her right shoulder. An MRI of Plaintiff's right shoulder was unremarkable, although an MRI of her spine revealed a small disc protrusion at C6–7 and "tiny disc bulging" at C4–5 and C5–6. Pires was diagnosed with right rotator cuff tendonitis resulting in right-sided cervical and trapezius myofascial pain.[2] (Tr. 228,

---

1. The record does not provide any definitive assessment of Plaintiff's English speaking and listening abilities, although some of her medical records and her responses to the ALJ's questions indicate that she can speak and understand English at a functional, though not highly proficient, level. (*See* Tr. 224, 225, 261, 283, 289, 367–89.)

2. Myofascial pain is pain of, or relating to, the fascia surrounding and separating muscle tissue. *Dailey v. Barnhart,* 277 F.Supp.2d 226, 231 (W.D.N.Y.2003) (*citing Stedman's Medical Dictionary* 1173 (27th ed.2000)).

229, 271.)

Plaintiff returned to work, but discomfort in her shoulder and neck continued, and in fact seemed to be aggravated by having her neck in flexion during her "light duty" work. (Tr. 263.) Despite physical therapy, her condition did not improve. (Tr. 263.) Dr. Ronald Paasch of Pioneer Sports ordered Pires out of work for two weeks as of January 26, 2005 in order to help decrease her pain. (Tr. 264.) After trying to return to light duty, Pires again reported that her work activities significantly increased her pain, and that continuing treatments including trigger point injections were unhelpful. (Tr. 263, 259.) Finally, after another attempt to return to work in April 2005 proved painful, Plaintiff left her job for good in May 2005. She received workers' compensation for her injury in the form of a lump sum settlement. (Tr. 377–78.)

As of May 4, 2005, Pires began seeing Dr. William Tosches of Neurology Associates. At his initial examination, Tosches found that Plaintiff had restricted range of motion in her neck and right shoulder and tenderness along the right trapezius muscle. He indicated in his notes that she had chronic cervical strain with underlying cervical disc disease and chronic tendonitis in the right shoulder. Tosches also concluded that Pires was "totally and permanently disabled as the direct and proximate cause of her work-related injuries of September 21, 2004." (Tr. 283–84.)

Tosches next saw Plaintiff in August 2005, when he found her condition was unchanged since her previous visit. (Tr. 282.) At a November 2005 exam, Tosches observed that Plaintiff had restricted range of motion of her neck and right shoulder, as well as continued moderate pain with episodes of sharp and stabbing and deep, throbbing pain. He again stated that she was "totally and permanently disabled." (Tr. 278–79.) Tosches similarly

affirmed Pires' disability in December 2005. (Tr. 275.) Throughout this time, Plaintiff was prescribed different pain medications, none of which were completely successful in eliminating her discomfort.

Another physician, Dr. James G. Wepsic of New England Baptist Hospital, saw Pires in May 2005 at the request of the lawyer representing her in her social security application. Plaintiff told Wepsic that she had left work because of "persistently severe" pain in her right shoulder and that, since doing so, the shoulder pain had limited her ability to perform tasks such as cooking, cleaning, and driving. She stated that lifting items, moving her neck, or using her right arm would worsen the pain. (Tr. 289.)

Wepsic observed that Pires had about 50 percent range of motion of her right shoulder, about 50 percent restriction of cervical spine motion, and diffuse weakness of her grip on the right side. He had difficulty assessing Plaintiff's loss of function "given the absence of anatomical abnormalities in either the cervical spine or shoulder to refer to." Noting that Pires' symptoms (her limited ability to move her neck or to remain in one place for long periods of time due to her neck and shoulder pain) appeared disabling, Wepsic concluded that "Ms. Pires remains totally disable [sic] as a result of her work incident of September 21, 2004." He asserted, however, that the duration of the disability and Plaintiff's prognosis could not be determined "without a clearer idea of the underlying cause of the restrictions of movement and pain" and "in the absence of definitive diagnostic studies." (Tr. 290.)

Wepsic also remarked that there were no indications for surgery and that weather changes might increase Plaintiff's joint pain. (Tr. 290.) Wepsic's review of Plaintiff's MRIs from November 2004, conducted later on that month, found a small disc

protrusion, consistent with the original reading of the radiologist. (Tr. 292.)

Finally, Plaintiff met with Dr. Eric S. White in November 2005. Pires told White she had experienced recurrent pain in her right shoulder and neck over the past year, exacerbated when engaging in daily activities and somewhat mitigated by rest. (Tr. 360.) White found that Plaintiff's range of motion on her right side "was slightly limited, but with encouragement and assistance she was able to go through a full range of motion." (Tr. 361.) He also observed that Pires' neck range of motion was close to normal. White diagnosed Plaintiff with mild degenerative disc disease of the cervical spine without radiculopathy [3] and an exacerbation of that condition in September 2004 with myofascial pain. (*Id.*) Overall, White estimated Plaintiff's whole person impairment to be around three percent, based on the fact that "she had no obvious guarding or muscle spasm on her examination and her neck and shoulder range of motion have approached normal," but that "her MRI studies do offer an underlying basis for her symptomatology." (Tr. 362.)

As of Pires' most recent exam on record (conducted in July 2006, by Dr. Tosches), she continued to complain of neck and shoulder pain. She had full range of motion of her shoulder at the time, although Tosches did note spasm and tenderness. Tosches assessed Plaintiff as having chronic cervical disc disease with cervical radiculopathy and a resolving right shoulder sprain, again stating that she "remains totally and permanently disabled." (Tr. 363.)

B. *The Commissioner's Decision.*

Plaintiff initially applied to the Social Security Administration ("SSA") for dis-

ability benefits on October 4, 2005, for disability beginning May 4, 2005. The agency's November 2005 assessment of Pires' residual functional capacity (performed by a non-examining physician) indicated that she would be limited to lifting a maximum of twenty pounds occasionally and ten pounds frequently, that she could stand and/or walk, or sit, with normal breaks for about six hours in an eight-hour workday, and that she would have limited ability to push or pull with her upper extremities. (Tr. 296–97.) The evaluator also noted that Plaintiff could do tasks involving climbing, balancing, stooping, kneeling, crouching, or crawling only occasionally and that her reaching ability was limited. (Tr. 298–99.) A similar assessment regarding the effects of Pires' depression concluded that it would moderately restrict her ability to maintain concentration for extended periods and to follow detailed instructions but would not impose limitations on her functional capacity. (Tr. 306–08, 321–22.) Plaintiff's disability application was denied, as was her petition for reconsideration. (Tr. 330–59.) Pires then sought a hearing before Addison Masengill, an administrative law judge ("ALJ").

The testimony at the hearing was relatively brief. Plaintiff testified that she had pain in her shoulder and neck that at times forced her to sit, lie down, or change position (although her migraine headaches, at that time occurring daily, also played a role). (Tr. 382, 388.) She stated that without medication, the pain she experienced was a nine on a scale of one to ten, while with medication it was a five or six but with the side effect of drowsiness. (Tr. 380–81.) According to Pires, she could lift a gallon of milk with her left

---

**3.** " 'Radiculopathy' is a disease of the nerve roots which often manifests as neck or shoulder pain." *Collins v. Astrue,* 493 F.Supp.2d 858, 870 n. 15 (S.D.Tex.2007) (*citing Dorland's Illustrated Medical Dictionary* 1511 (29th ed.2000)).

hand, but only small items with her right hand. (Tr. 383–84.) On a typical day, Plaintiff would mainly stay in bed and watch television, do a little bit of housework, such as cooking, and perform personal tasks such as bathing and dressing herself. She would drive only when necessary to go to the doctor. (Tr. 386–88.)

Pires' attorney, Joseph Guerreiro, also spoke at the hearing. He argued that Plaintiff's inability to work was a cumulative result of her various physical and psychological problems—her shoulder injury, her chronic headaches, and her depression. (Tr. 393.)

The vocational expert ("VE"), David Soja, testified last. He identified Pires' positions as machine operator and assembler as medium, semi-skilled work and light, unskilled work respectively. The ALJ asked Soja whether a hypothetical individual of Plaintiff's age, education, and work experience would be able to perform her past employment, or in the alternative find new employment, involving light, unskilled work activity, excluding tasks such as overhead reaching or lifting with the right arm, and not entailing more than occasional grasping, handling, or twisting with the right hand, or exposure to temperature extremes. (Tr. 398–99.)

The VE stated that such a person could not perform Pires' old job of assembler or machine operator, but would be able to work as a parking lot attendant (although the possibility of extreme cold would rule that out in New England), census code 935, an inspector of small parts, census code 874, or a ticket taker, census code 442.[4] He also testified that those jobs exist both nationally and in Massachusetts, and that there are 141,000 inspector and 58,000 ticket taker positions available nationwide (with 2863 and 1167 available, respectively, in Massachusetts). (Tr. 399.) He did not explicitly address what impact Pires' limited language skills would have on her employment prospects.

The ALJ next modified his hypothetical to add the conditions that the individual suffered from chronic headache pain and side effects of medication resulting in the individual potentially being off-task around a third of the time. Given those conditions, Soja articulated his belief that such an individual, if unable to sustain work on a continuous basis, could not find any employment. (Tr. 400.)

Masengill denied Plaintiff's claim for benefits in a written decision issued October 26, 2006. The ALJ found that Pires had severe impairments in the form of cervical disc disease, chronic right shoulder sprain, cervical radiculopathy, migraine headaches, and depression, but that those impairments did not meet the listed criteria in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. (Tr. 18.) He judged that Plaintiff's residual functional capacity would allow her:

> to lift and carry 10 pounds frequently and 20 pounds occasionally, and stand, walk, and sit each for about 6 hours in

---

4. The U.S. Census Bureau offers short descriptions of these occupations:

> Parking lot attendant: Park automobiles or issue tickets for customers in a parking lot or garage. May collect fee.
> Inspector: Inspect, test, sort, sample, or weigh nonagricultural raw materials or processed, machined, fabricated, or assembled parts or products for defects, wear, and deviations from specifications. May

> use precision measuring instruments and complex test equipment.
> Ticket taker: Assist patrons at entertainment events by performing duties, such as collecting admission tickets and passes from patrons, assisting in finding seats, searching for lost articles, and locating such facilities as rest rooms and telephones.
> U.S. Census Bureau, Industry and Occupation, http://www.census.gov/hhes/www/ioindex/txtnew.html (last visited May 2, 2008).

an 8–hour workday, with the option to sit or stand as needed. She can perform no more than occasional grasping, handling, and fingering with her dominant right hand. She can perform occasional stooping, crawling, crouching, and kneeling. She must avoid extreme cold temperatures and vibration. She cannot perform overhead lifting or reaching with her right upper extremity. She must avoid heights and she cannot climb ladders, ropes, or scaffolds. She can perform simple, unskilled tasks.

(*Id.*)

The ALJ's findings were based on his assessment of Plaintiff's testimony and medical records, including evaluations by physicians Tosches, Wepsic, White, and Pardo. He stated that Pires' testimony regarding "the intensity, persistence and limiting effects of [her] symptoms" was "somewhat credible, but not to the extent alleged" when set against physical examinations and imaging studies that had revealed only modest findings. Masengill did not give Tosches' opinion much weight, especially his opinion that Plaintiff was "totally disabled," due to its inconsistency with Wepsic's and White's milder assessments. (Tr. 19–20.)

Masengill also addressed Pires' history of migraine headaches and depression. Noting that both pre-dated her shoulder injury and had not previously prevented her from working, the ALJ concluded that the modest limits these conditions placed on Plaintiff were adequately accounted for in his assessment of Pires' functional capacity and would not prevent her from engaging in a moderate level of activity. (Tr. 20–21.)

Based on this appraisal of the evidence, and the testimony of the vocational expert as to jobs available to an individual with Plaintiff's determined residual functional capacity (namely, parking lot attendant, inspector, or ticket taker), the ALJ con-cluded that though Pires could no longer perform her former job of assembler, she was capable of adjusting to "other work that exists in significant numbers in the national economy." (Tr. 22.) Accordingly, he issued a finding that Plaintiff was "not disabled." (*Id.*)

Pires sought review of the ALJ's decision before the Appeals Council for Social Security. The Council refused review on August 24, 2007. On October 24, 2007, Plaintiff filed a complaint in this court to obtain judicial review of the SSA's disposition of her claim.

## III. *STANDARD OF REVIEW*

The court's review of the Commissioner's decision "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." *Nguyen v. Chater,* 172 F.3d 31, 35 (1st Cir.1999) (citation omitted). Any findings of fact are conclusive only if supported by substantial evidence, without "ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Id.* (citations omitted). The court must affirm the SSA's determination " 'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.' " *Ortiz v. Sec'y of Health & Human Servs.,* 955 F.2d 765, 769 (1st Cir.1991) (*quoting Rodriguez v. Sec'y of Health & Human Servs.,* 647 F.2d 218, 222 (1st Cir.1981)). The resolution of conflicts in the evidence or questions of credibility is outside the court's purview, and thus where the record supports more than one outcome, the ALJ's view prevails as long as it is supported by substantial evidence. *Rodriguez Pagan v. Sec'y of Health & Human Servs.,* 819 F.2d 1, 3 (1st Cir.1987), *cert. denied,* 484 U.S. 1012, 108 S.Ct. 713, 98 L.Ed.2d 663 (1988) (*citing*

*Lizotte v. Sec'y of Health & Human Servs.*, 654 F.2d 127, 128 (1st Cir.1981)).

## IV. DISCUSSION

The SSA disability determination is subject to a fivestep process under 20 C.F.R. § 404.1520. First, the agency determines if the claimant is disqualified from disability benefits because he or she is engaged in substantial gainful activity. Next, the SSA considers the claimant's impairment(s) and ascertains whether they meet the threshold requirements for severity and duration. Third, if the individual's impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the application is granted. Otherwise, the SSA assesses the claimant's residual functional capacity and determines whether he or she can still perform past relevant work. If the claimant cannot perform past relevant work, the agency finally considers his or her age, education, and work experience to see if he or she is able to do any other job available in significant numbers in the national economy; if not, the application is granted. *See Seavey v. Barnhart*, 276 F.3d 1, 5 (1st Cir.2001).

### A. Plaintiff's Credibility.

The major dispute in this case centers on the adequacy of the ALJ's evaluation of Pires' allegations regarding the pain caused by her shoulder and neck impairments. In assessing a claimant's complaints of pain, an ALJ must first find that the individual's impairments, as demonstrated by "medical signs and laboratory findings," "could reasonably be expected to produce the symptoms." Social Security Ruling ("SSR") 96–7p, 61 Fed.Reg. 34,483 (July 2, 1996). If a claimant meets that threshold, as Masengill found Pires did in this case (Tr. 20), the ALJ should evaluate whether "the intensity, persistence, and functionally limiting effects" of the pain would affect the individual's ability to work. SSR 96–7p. This step requires an appraisal of the credibility of the person's statements regarding his or her symptoms and their functional effects. *Id.*

SSR 96–7p warns that reliance on objective medical evidence alone in judging credibility is not appropriate:

Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements.... [Complaints regarding pain and its functional effects] may not be disregarded solely because they are not substantiated by objective medical evidence.... The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

*Id.; see also* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c); *Nguyen v. Chater*, 172 F.3d 31, 34 (1st Cir.1999) (per curiam) (citing 20 C.F.R. § 404.1529(c) for rule that in assessing plaintiff's level of pain, "the ALJ was required to consider evidence *in addition to* medical tests") (emphasis added).

Accordingly, the First Circuit has explained that, where faced with subjective claims of pain, an ALJ must inquire into six "*Avery* factors" at an individual's hearing and consider them in his or her decision. *Avery v. Sec'y of Health & Human Servs.*, 797 F.2d 19, 29 (1st Cir.1986); *see also Nguyen v. Chater*, 172 F.3d 31, 34 (1st Cir.1999); *Lopes v. Barnhart*, 372 F.Supp.2d 185, 191–92 (D.Mass.2005). Those factors are:

1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

3. Type, dosage, effectiveness, and adverse side-effects of any pain medication;

4. Treatment, other than medication, for relief of pain;

5. Functional restrictions; and

6. The claimant's daily activities.

*Avery,* 797 F.2d at 29.

The ALJ must then take into account any evidence relating to these six areas in judging the credibility of a claimant's subjective claims of pain, specifying his or her reasons for disbelieving any of those complaints. *See* SSR 96–7p ("In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, ... the adjudicator must consider [the *Avery* factors] in addition to the objective medical evidence when assessing the credibility of an individual's statements."); *Da Rosa v. Sec'y of Health & Human Servs.,* 803 F.2d 24, 26 (1st Cir.1986) (remanding credibility decision to ALJ and stating that any new credibility finding "must be supported by substantial evidence and the ALJ must make specific findings as to the relevant evidence he considered in determining to disbelieve the appellant"); *Guyton v. Apfel,* 20 F.Supp.2d 156, 166 (D.Mass.1998) ("[A] general reference to the record stating that 'Claimant's testimony regarding pain and discomfort is not credible to the extent alleged in light of the evidence of record' .... does not satisfy the requirement of specific findings for credibility determinations.").

■ In considering a plaintiff's credibility, the ALJ may not reject evidence elucidated during the *Avery* inquiry solely based on inconsistency with objective medical evidence. While objective medical evidence may be a useful factor in judging the credibility of testimony, SSR 96–7p states in no uncertain terms:

*[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence.* A report of negative findings from the application of medically acceptable clinical and laboratory diagnostic techniques is one of the many factors that appropriately are to be considered in the overall assessment of credibility. However, the absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence.

SSR 96–7p (emphasis in original); *see also* 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain ... solely because the available objective medical evidence does not substantiate your statements."); *Valiquette v. Astrue,* 498 F.Supp.2d 424, 433 (D.Mass.2007) ("[S]ome dissonance between the objective medical assessments and the plaintiff's description of the level of pain he was experiencing .... merely poses the question of the credibility of his subjective complaints, it does not answer it.").

The mandate to take evidence besides objective medical findings into account has been solidly established in the case law of this and other circuits. *See, e.g., Rollins v. Massanari,* 261 F.3d 853, 856–57 (9th Cir. 2001); *Smith v. Apfel,* 231 F.3d 433, 439–40 (7th Cir.2000); *Felisky v. Bowen,* 35 F.3d 1027, 1039 (6th Cir.1994); *Torres v. Barnhart,* 235 F.Supp.2d 33, 43 (D.Mass. 2002); *Cashman v. Shalala,* 817 F.Supp. 217, 222 (D.Mass.1993).

■ Here, the ALJ's only reference to any consideration beyond Pires' physicians' objective medical findings was his factual summary of the evidence regarding the *Avery* factors. Though at times courts have considered the recitation of such information to be enough to demonstrate that the ALJ "considered" it, that is not the case where the evidence as laid out does not support the ALJ's credibility determination. *Compare Frustaglia v. Sec'y of Health & Human Servs.*, 829 F.2d 192, 194–95 (1st Cir.1987) (forgiving lack of express findings regarding credibility determination where substantial evidence, including inconsistent statements by claimant, supported ALJ's decision); *Rand v. Barnhart*, 357 F.Supp.2d 361, 367–68 (D.Mass.2005) (similar) *with Da Rosa v. Sec'y of Health & Human Servs.*, 803 F.2d 24, 26 (1st Cir.1986) (remanding with instructions that ALJ's credibility determination must be supported by substantial evidence and specific findings); *Rohrberg v. Apfel*, 26 F.Supp.2d 303, 310 (D.Mass.1998) (noting that credibility determination both failed to follow procedure set out in *Avery* and was not supported by substantial evidence); *Waters v. Bowen*, 709 F.Supp. 278, 281–85 (D.Mass.1989) (reversing ALJ's finding that plaintiff's complaints of pain were not credible where the only cited reason for that finding was objective medical evidence, and expressing skepticism that the *Avery* factors provided substantial evidence to support the ALJ).

The consistency of the evidence in support of Pires' subjective claims of pain in this case casts doubt on any assumption that the ALJ did implicitly consider the *Avery* factors and construed them to support his conclusion. Plaintiff told Masengill that she performed only minimal daily activities, with the tasks of driving to medical appointments and making beds posing difficulty; that her severe pain was only partially alleviated by pain medication and other treatments; and that most positions, including sitting, standing, and even lying down at times caused her pain. Furthermore, none of the physicians assessing Pires' level of impairment expressed skepticism regarding her claims of disability. Given this set of facts, it is difficult to determine on what reasonable basis the ALJ could have found Pires' testimony not to be credible if he were truly taking into account evidence besides the objective findings of Plaintiff's physical exams and medical scans.

Therefore, this case will be remanded to the ALJ to address the credibility of Pires' testimony of severe pain in light of the *Avery* factors. *See Freeman v. Barnhart*, 274 F.3d 606, 609 (1st Cir.2001) (remand is appropriate remedy to "allow the Commissioner to fulfill his role of resolving conflicting evidence, a task which is not [the court's] to perform"); *cf. Waters v. Bowen*, 709 F.Supp. 278, 285 (D.Mass.1989).

■ However, the court does note that the ALJ need not reconsider his discounting of the limitations imposed by Plaintiff's depression and headaches, as that finding is supported by substantial evidence in the record. It is undisputed that Pires was able to work for several years despite both of these afflictions. *Cf. Bush v. Shalala*, 94 F.3d 40, 45 (2d Cir.1996) (expressing support for ALJ's reliance on fact that Social Security applicant had worked for seven years despite allegedly disabling condition). While the depression and headaches might certainly have some additive effect in combination with her shoulder pain, as Plaintiff's attorney argued, Masengill adequately considered that possibility and took the potential for moderate limitations on Pires' ability to concentrate into account in determining her residual functional capacity. *Cf. Ortiz v. Sec'y of Health & Human Servs.*, 890 F.2d 520, 525 (1st Cir.1989) (per curiam) (upholding

ALJ's assessment of impairment imposed by depression, even though ALJ did not address issue explicitly and matter was "not entirely free of doubt," where medical evidence could support determination).

### B. *Vocational Expert's Testimony.*

Given the above decision to remand, the sufficiency of the vocational expert's testimony may become moot should the ALJ change his conclusions regarding Plaintiff's residual functional capacity. But if the ALJ does find that the Avery factors support the original findings that he used in questioning the VE, Soja's testimony as to Pires' employability is, for the most part, valid and the ALJ may rely on it at the final step of the disability determination. *See Arocho v. Sec'y of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir.1982) (VE's testimony is relevant where functional capacity limits as described in hypothetical is supported by evidence regarding claimant's medical condition).

■ It is true that the VE did not provide Dictionary of Occupational Title ("DOT") numbers for the jobs that he testified Pires could perform (parking lot attendant, inspector, or ticket taker), which would have referred the ALJ to a detailed description of each position's duties and allowed him to double-check the VE's testimony.[5] Furthermore, the VE did not otherwise testify as to the specific requirements of each possible job. Plaintiff accordingly expresses skepticism as to

whether these three occupations were in fact viable given her physical and educational limitations, pointing out that according to the DOT a job as an inspector involves repetitive use of both hands for grasping or handling, that a job as a ticket taker might be too demanding because of the requirement of repeated manual tasks such as tearing tickets, and that all three jobs might also require a higher level of English language skill than Plaintiff possesses.[6]

As the government notes, Plaintiff's attorney did not object to Soja's testimony, and in fact declined to pose his own questions after the ALJ elicited the expert's testimony, thus forgoing the opportunity to clarify which DOT numbers were relevant. (Tr. 400.) This undermines Plaintiff's allegations that some substantial error occurred. *Cf. Carey v. Apfel*, 230 F.3d 131, 146–47 (5th Cir.2000) ("[C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing."); *Edwards v. Sec'y of Health & Human Servs.*, No. 94–1345, 1994 WL 481140, at *3–4, 1994 U.S.App. LEXIS 24091, at *10–*13 (1st Cir. Sept. 2, 1994) (unpublished) (rejecting objection that DOT numbers were not used in part because counsel did

---

**5.** Neither party has suggested which DOT numbers might cover the jobs alluded to by the VE. It appears that the most appropriate DOT numbers are: 344.667–010 (ticket taker) and 915.473–010 (parking-lot attendant). As to the "inspector" category there are a large number of possible positions encompassing a range of exertional and skill levels; one illustrative job description is 609.684–010 (inspector, general).

**6.** Plaintiff's contention that one or all of these jobs might offer only part-time employment is irrelevant to the disability determination. *See* 20 C.F.R. § 404.1572(a) ("Your work may be substantial even if it is done on a part-time basis ....") (*cited in Arocho v. Sec'y of Health & Human Servs.*, 670 F.2d 374, 376 (1st Cir. 1982)); *see also Born v. Sec'y of Health & Human Servs.*, 923 F.2d 1168, 1175 (6th Cir. 1990) (sustaining finding that plaintiff is not disabled where there is a significant number of part-time jobs available to him).

not object to omission at the hearing); *Torres v. Sec'y of Health & Human Servs.*, 870 F.2d 742, 746 (1st Cir.1989) (finding ALJ's questioning adequate where claimant had chance to examine vocational expert himself but did not do so).

Substantively, Pires does not for the most part mount a convincing argument that the lack of the DOT numbers resulted in any inaccuracy in the ALJ's consideration of the potential jobs proposed by Soja. *Cf. Irelan v. Barnhart,* 82 Fed.Appx. 66, 72 (3d Cir.2003) (unpublished) ("[T]here is no legal basis for [the plaintiff's] argument that 'if the claimant is to adequately test the accuracy of the VE testimony, the DOT numbers must be available.'"); *Edwards,* 1994 WL 481140, at *2–3, 1994 U.S.App. LEXIS 24091, at *9–*10 (unpublished) (drawing distinction between case at hand and decisions vacated because VE's testimony was contradicted entirely by DOT, affirmatively indicating that expert had made a mistake).

Though Plaintiff raises the possibility that the jobs suggested by the VE might in fact be ruled out by Pires' limitations, she does not describe any "clear dichotomy between the DOT and the [vocational expert's] testimony" that might cause the court to believe Soja was mistaken in asserting that she could adjust to the jobs of parking lot attendant, inspector, or ticket taker. *Id.* at *3, 1994 U.S.App. LEXIS 24091, at *10; *cf. Whitzell v. Barnhart,* 379 F.Supp.2d 204, 218 (D.Mass.2005) ("[T]his matter need not be remanded on this basis because there is no conflict between the jobs recommended by the vocational expert and the residual functional capacity of light, unskilled work.").

For example, Plaintiff's concern that the work that might be involved in working as a ticket taker reaches beyond Pires' functional capacity is not supported by the DOT's definition of a ticket taker's duties. *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles,* the companion volume to the DOT, describes ticket taker as light work involving frequent reaching, frequent handling, and occasional fingering. However, that work may be performed with just one arm, meaning that the limitations on Pires' right arm would not exclude her from this type of work. *See Feibusch v. Astrue,* No. 07–00244, 2008 WL 583554, at *5, 2008 U.S. Dist. LEXIS 16632, at *12–*13 (D.Haw. Mar. 4, 2008); *Shears v. Barnhart,* No. 05–3713, 2006 WL 1641635, at *1–2, 2006 U.S. Dist. LEXIS 38143, at *5–6 (E.D. Pa. June 8, 2006).

Plaintiff also speculates that her lack of facility with the English language might restrict her job opportunities. However, Soja took Pires' educational background into account in assessing her capacity for employment (Tr. 398), a factor that under SSA regulations includes an individual's level of English fluency. *See* 20 C.F.R. § 416.964 ("The term education also includes how well you are able to communicate in English since this ability is often acquired or improved by education."). Pires does not offer any authority to support the argument that the vocational expert's resulting determination was in fact mistaken. Though she argued at the hearing on this motion that the language requirements in the DOT for each of the jobs identified by the VE go beyond Plaintiff's reading and writing capabilities, this point is unavailing. First, the lowest language rating even assigned by the DOT to any occupation ("01") still requires an individual to: recognize the meaning of 2500 two- or three-syllable words, read 95 to 120 words per minute, and print simple sentences containing a subject, verb, and object. U.S. Dep't of Labor, Dictionary of Occupational Titles app. C (4th ed.1991). Furthermore, that very "01" rating is the one assigned to Plaintiff's former jobs of

machine operator (649.685–070) and assembler (706.684–022).

Pires additionally questions the VE's estimates as to the number of such jobs available in Massachusetts and nationally. Soja did not provide a source for those figures, and Plaintiff contends that they may be invalid if taken from the DOT since that authority provides the number of positions available based on the ability to perform those jobs without restrictions. This argument is not credible, since the VE's testimony clearly proposes these jobs as ones that Plaintiff could undertake even given her physical limits. Thus he would not have to reduce the applicable figures to account for restrictions on Pires' abilities. *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir.2005) (finding ALJ's reliance on expert's testimony about number of jobs available to be warranted since a vocational expert's expertise is sufficient foundation for any testimony).

■ The one exception to the general acceptability of the VE's testimony is his statement that Plaintiff could perform the job of small parts inspector. (Tr. 399.) There is no equivalent job title in the DOT, and the census code only vaguely describes this job's duties as "to [i]nspect, test, sort, sample, or weigh nonagricultural raw materials or processed, machined, fabricated, or assembled parts or products for defects, wear, and deviations from specifications." Census Bureau, Industry and Occupation, http://www.census.gov/hhes/www/ioindex/txtnew.html# 874 (last visited May 9.2008). The vast number of jobs falling within the category of inspector, all with differing job requirements, makes it quite difficult to tell whether someone with Pires' level of impairment might be able to perform an inspector job. Therefore, the lack of any specifics as to what this job might entail renders this aspect of the VE's testimony insufficient to satisfy the Commissioner's burden of proving the existence of jobs in the national economy that may be performed by someone with the claimant's residual functional capacity. *See Seavey v. Barnhart*, 276 F.3d 1, 5 (1st Cir.2001) (stating that burden lies on Commissioner to come forward with evidence of jobs that claimant can perform); *cf. Perez v. Chater*, 17 F.Supp.2d 1115, 1127 & n. 33 (C.D.Cal.1997) (holding that VE's testimony did not satisfy that burden due to his failure to identify any specific inspector job among hundreds of possibilities consistent with ALJ's findings as to plaintiff's capacity).

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Dkt. No. 5) is hereby ALLOWED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (Dkt. No. 7) is hereby DENIED. The case is REMANDED to the Commissioner for reconsideration of the credibility of Plaintiff's testimony, taking into consideration the *Avery* factors and SSR 96–7p and providing specific reasons for believing or disbelieving Pires' complaints of pain. If the estimation of Plaintiff's residual functional capacity is thereby altered, Defendant should also reassess her ability to find employment. The clerk is ordered to enter judgment for Plaintiff. The case may now be closed.

It is So Ordered.